Patrick JAHN and Melba Jahn, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Donald REGAN, Secretary of the Department of Treasury, United States of America, Defendant.

Patrick JAHN and Melba Jahn, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Noble P. KHEDER and the State of Michigan, Defendants.

Civ. A. Nos. 82–72012, 82–73045.

United States District Court, E.D. Michigan, S.D.

April 18, 1984.

Riley P. Richard, Birmingham, Mich., for plaintiffs.

Ronald F. Fischer, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, D.C., Erica Weiss Marsden, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiffs are husband and wife who have instituted two actions, one against the Secretary of the Department of Treasury of the United States and the other against the Director of the Department of Social Services of the State of Michigan, challenging the validity of the Internal Revenue Service's transmittal of plaintiffs' 1981 joint tax refund to the State pursuant to the Omnibus Budget Reconciliation Act of 1981, 42 U.S.C. § 664, and 26 U.S.C. § 6402 to apply on the plaintiff husband's debt to the State for child support. Plaintiffs claim that the tax refund or overpayment is held by them as tenants by the entireties and cannot be used to satisfy the debts of the husband. Plaintiffs also assert that the procedure used by both agencies amounts to an unlawful taking of property without due process of law or just compensation in violation of the Fifth and Fourteenth Amendments.

Defendant Secretary of the Treasury has moved for dismissal of plaintiffs' complaint under Federal Rules of Civil Procedure (F.R.C.P.) 12(b)(6) for failure to state a cause of action. Defendant Director of Social Services has filed a motion pursuant to F.R.C.P. 12(c) or, alternatively a motion for summary judgment under F.R.C.P. 56, claiming that plaintiffs' complaint should be dismissed as a matter of law because it does not state a cause of action. Since the defendants' motions concern identical factual settings, the Court will treat both motions in this single opinion.

## I. FACTS

The Aid to Families with Dependent Children ("AFDC") program establishes a fund to enable each state "to furnish financial assistance and rehabilitation and other services ... to needy dependent children and the parents or relatives" with whom they live. 42 U.S.C. § 601. The statute establishing this program provides that among the conditions of eligibility for aid, each applicant or recipient is required: "to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such as-

signment is executed." 42 U.S.C. § 602(a)(26). Presumably, this measure is to ensure that those owing child support will not avoid their obligation because of their families' participation in the AFDC. More importantly, by permitting the state to collect these payments, the AFDC program will be properly funded and its integrity and purpose maintained.

Although Congress intended that the states be responsible for the collection of child support payments, to facilitate state efforts Congress established methods to enable the states to utilize federal resources. *See* S.Rep. No. 93–1356, 93rd Cong., 2nd Sess., reprinted in 1974 U.S. Code Cong. & Adm.News 8133, 8150.[1] One of these methods enables the state to receive the tax overpayment of a person owing child support to the state directly from the Internal Revenue Service. 42 U.S.C. § 664.[2] The plaintiffs challenge the propriety of the collection of this property as well as the legitimacy of the procedures used by the Internal Revenue Service (IRS) and the State of Michigan in retaining plaintiffs' 1981 joint tax refund.

The essential facts as to the procedure used by the IRS and the State are not in dispute. Each State participating in the AFDC program is required to operate a child support enforcement program in accordance with Title IV–D of the Social Security Act, 42 U.S.C. § 601 *et seq.* and 42 U.S.C. § 651 *et seq.* In 1981 and 1982, Michigan complied with Title IV–D and sought the 1981 tax refunds of those who were delinquent in child support payments by implementing the following procedures in cooperation with the Federal Office of Child Support Enforcement (FOCSE) and the IRS.

Initially, child support payments are determined by the state circuit courts in adversary hearings, which may or may not be part of a divorce decree. Mich.Comp.Laws Ann. §§ 552.16, & 722.24. Michigan has

---

1. The Senate Report states:

 While the Committee bill leaves basic responsibility for child support and establishment of paternity to the states, it also envisions a far more active role on the part of the Federal government in monitoring and evaluating state programs, in providing technical assistance to the states in locating absent parents and obtaining support payments from them. S.Rep. No. 93–1356, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News, 8133, 8150.

2. 42 U.S.C. § 664 reads:

 *Collection of past-due support from Federal tax refunds.*

 (a) Procedures applicable; distribution.

 Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which has been assigned to such State pursuant to section 602(a)(26) of this title, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 657(b)(3) of this title.

 (b) Regulations; contents, etc.

 The Secretary of the Treasury shall issue regulations, approved by the Secretary of Health and Human Services, prescribing the time or times at which States must submit notices of past-due support, the manner in which such notices must be submitted, and the necessary information that must be contained in or accompany the notices. The regulations shall specify the minimum amount of past-due support to which the offset procedure established by subsection (a) of this section may be applied, and the fee that a State must pay to reimburse the Secretary of the Treasury for the full cost of applying the offset procedure, and provide that the Secretary of the Treasury will advise the Secretary of Health and Human Services, not less frequently than annually, of the States which have furnished notices of past-due support under subsection (a) of this section, the number of cases in each State with respect to which such notices have been furnished, the amount of support sought to be collected under this subsection by each State, and the amount of such collections actually made in the case of each State.

 (c) Definition.

 As used in this part the term "past-due support" means the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living.

established a "friend of the court" in each circuit who acts under the supervision and direction of the circuit court and who is responsible for, among other duties, determining the amount of child support arrearages and enforcing payment of delinquent court-ordered support payments. Mich. Comp.Laws Ann. §§ 552.251 & 552.252.[3] When a participant has assigned her right to child support from a particular private individual to the State as required by the AFDC, the friend of the Court is also responsible to ensure that such support payments are made pursuant to the circuit court order to the State. When a person is appreciably in arrears to the State for support payments, the friend of the court can initiate procedures to obtain any tax refund to apply towards the arrearage.[4]

To procure a tax refund, the friend of the court submits data to the State Office of Child Support within the Department of Social Services regarding persons with overdue support obligations owed to AFDC recipients. The friend of the court must certify: (i) that the amount of the arrearage reported is accurate; (ii) that the arrearage is owed to the State; (iii) that the arrearage is at least three months old; and (iv) that reasonable efforts have been made to collect the arrearage amount.[5] The certification is an attempt to comply with reg-

ulations issued by the Secretary of Treasury, pursuant to 42 U.S.C. § 664(b).[6] 45 C.F.R. § 303.72(b) (1982) states:

> Past-due support qualifies for offset [of a tax refund] if:
>
> (1) There has been an assignment of the support obligation under 45 C.F.R. 232.11 of this title to the State making the request for offset and that State has made reasonable efforts to collect the amount of the obligation;
>
> (2) Amount of the past-due support is not less than $150;
>
> (3) The support has been delinquent for three months or longer; and
>
> (4) A notification of liability for past-due support has been received by the Secretary of the Treasury ...

The purpose behind these requirements is to ensure the accuracy of the arrearage and "to avoid treating IRS collection as the primary method of enforcement where, in fact, other effective means are readily available for the State to use." 47 Fed. Reg. 7427 (1982).

The State Office of Child Support forwards the information to the FOCSE who, in turn prepares and submits the requests to the IRS. The IRS then determines if a tax refund is due to any of the persons reported to them through this procedure and withholds any refund up to the amount

---

**3.** The Act governing the operation and duties of the "friend of the court" in 1981, Mich.Comp. Laws Ann. § 552.251 *et seq.,* was repealed in July of 1983 and replaced with Mich.Comp. Laws Ann. § 552.501 *et seq.* The new Act did not significantly change the operations of the "friend of the court" from the perspective of the instant case.

**4.** This discussion primarily centers on the procedures used to obtain and retain the plaintiffs' 1981 joint tax refund. This process has been modified and updated.

**5.** The following is an example of a certification form of the friend of the court:

TRANSMITTAL CERTIFICATION
Date: _____
To: Office of Child Support
Michigan Department of Social Services
From: (name, title, jurisdiction)
Subject: Request for collection of delinquent child support by the Internal Revenue Service through the federal tax refund offset process

I certify that every request for collection included with this transmittal meets the following requirements:
1. The amount for the delinquency under a court order for child support is not less than the amount owed for 3 months and is not less than $500.00.
2. Our agency has made diligent and reasonable efforts to collect such amounts using collection mechanisms available under state law.
3. The requests are in the form of and contain all the necessary information as required by the Office of Child Support, and that this information is true and correct.
The total number of requests is _____
The total amount of arrearage is _____
 (signature of certifying official)
Agency contact person: _____
Contact phone number: _____

**6.** *See, supra,* note 2.

of reported arrearage as directed by 42 U.S.C. § 664 and 26 U.S.C. § 6402.[7] As required by statute 26 U.S.C. § 6402,[8] the IRS then sends notices to taxpayers that a refund was withheld to satisfy an obligation for past-due support owed to the State.[9] The notice contains the name and telephone number of the State Office of Child Support. The notice informs taxpayers that if they have any question about support obligations or believe that the stated amount is in error, they should contact the State agency at the telephone number listed on the notice.[10] Upon calling the State agency, the caller would hear a recorded message that they have reached the Michigan Office of Child Support and that the IRS is offsetting tax refunds for past-due child support. The message further explains that the friend of the court certified the arrearage. Among other basic information, the message relayed: "If you feel the tax offset was made in error or resulted in an overpayment, you must contact the Friend of the Court." Regarding joint tax returns, the message stated that a Form 1040X may be filed with the IRS and that: "This is a federal tax issue which does not involve the friend of the court or the Office of Child Support." The message concluded with the phone number of the Office of Child Support.

Those who contact the State Department of Social Services, through the recorded message or their own initiative, receive a form letter explaining procedures for questioning the amount of arrearage certified by the friend of the court and for obtaining a refund. For spouses who are not indebted to the State and who had filed a joint income tax a similar procedure is followed. If the individual questions the amount of arrearage, the notice provides the name and address of the friend of the court responsible for overseeing the debt. If the case was submitted in error, the friend of the court sends a correction notice to the State. The letter further advises: "If any refund is due, it will be processed as soon as possible."

If the individual is an unobligated spouse desiring to have a portion of the joint tax refunded, he or she was advised to complete various forms and send them to the Department of Social Services where "[t]he refund requested will be processed as soon as possible."

In 1982, plaintiffs filed a joint federal income tax return with IRS. The return indicated that Melba Jahn's total wages were $6,891.63 with $658.38 withheld for tax purposes. The return also stated that Patrick Jahn's total wages were $12,994.36 with $2,494.03 withheld. Under these figures the plaintiffs had overpaid $1,696.33 of income tax and were entitled to that amount as a refund. On April 30, 1982,

---

7. 26 U.S.C. § 6402(c) provides:

(c) Offset of past-due support against overpayments.—The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

8. *See, supra,* note 7.

9. The notice of withholding was also required by the Secretary's regulations. Regulation 45 C.F.R. § 303.72(f) (1982), *currently codified,* 45 C.F.R. § 303.72(f)(2) states: "The Internal Revenue Service shall notify the taxpayer in writing of the amount and date of the offset for past-due support and of the State to which this amount of past-due support has been paid."

The letter the IRS sent in 1982 is attached to this Opinion as Appendix No. 1. Originally, the IRS planned to send a notice of possible withholding of a tax refund 60 days before the refund was actually assessed and transferred to the State. This notice was to allow the obligated taxpayer to satisfy his debt with the State before his return was withheld.

10. In 1983, the IRS changed the content of this notice. The revised copy has been attached to this Opinion as Appendix No. 2.

however, plaintiff Patrick Jahn received a written notification from the United States Department of Treasury previously discussed, which informed Patrick Jahn that the entire amount of overpayment of their 1981 income tax had been retained by the IRS to satisfy past-due child support.

Plaintiffs do not contest that Patrick Jahn owed child support to the State. Nor do they contest the accuracy of the amount of arrearage owed by Patrick Jahn as certified by the friend of the court. Further, plaintiffs do not allege that they utilized the state and federal procedures available for obtaining their overpayment. Instead, they brought suit against the Secretary of the Treasury and the Director of the State Department of Social Services alleging in both complaints: (i) that the overpayment is held by plaintiffs as tenants by the entireties and is exempt from attachment to satisfy the debts of one of the owners; and (ii) that this procedure constituted an unlawful taking of private property without due process of law and without just compensation in violation of the United States and Michigan Constitutions.[11]

In both complaints the plaintiffs requested certification to bring their suit as a class action and represent those whose 1981 joint tax overpayment was transferred to the State by the IRS in satisfaction of past-due child support payments. Moreover, plaintiffs request the same relief in both complaints. Plaintiffs pray for a refund of their 1981 federal tax return without reduction for child support arrearages, permanent injunction restraining government officials and personnel from utilizing the tax withholding procedure of 42 U.S.C. § 664 and 26 U.S.C. § 6402(c), damages for the plaintiffs individually and for the class as a whole, and their attorney fees and costs.

The defendant Secretary has brought a motion to dismiss the complaint based on several grounds: (i) that the doctrine of sovereign immunity bars plaintiffs' claims; (ii) that this action is barred by the Anti-Injunction Act; and (iii) that it is further prohibited under the Declaratory Judgments Act.[12]

Defendants State of Michigan and Noble P. Kheder have moved for judgment on the pleadings or for summary judgment. The State claims that plaintiffs' complaint as a matter of law does not state a cause of action since the plaintiffs do not hold the joint tax return of tenants by the entireties and because the plaintiffs were afforded the process they were constitutionally due.

## II. SECRETARY OF TREASURY'S MOTION TO DISMISS

The Secretary first asserts that plaintiffs' action is barred by the doctrine of sovereign immunity. The Secretary claims that although plaintiffs sued him in his individual capacity that their suit is actually directed against the United States. *See e.g., Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (per curiam). Therefore, the plaintiffs must claim a specific federal statute which waives sovereign immunity, *e.g., Seibert v. Baptist,* 594 F.2d 423, 428 (5th Cir.1979), and they have not. The Secretary further argues that even if the action can be brought against him in his official capacity, the plaintiffs are only entitled to injunctive relief prohibiting future action and cannot obtain relief requiring affirmative action such as damages and a tax refund. *Citing, Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 691, n. 11, 69 S.Ct. 1457, 1462 n. 11, 93 L.Ed. 1628 (1949).

**11.** Michigan courts have interpreted the State constitutional provisions affording due process as not providing any greater rights than the Federal Constitution affords. *See, e.g., Van Slooten v. Larsen,* 410 Mich. 21, 52–55, 299 N.W.2d 704 (1980); *Crider v. Michigan,* 110 Mich.App. 702, 728–30, 313 N.W.2d 367 (1981). Therefore, a separate discussion of the due process guarantees provided under the Michigan Constitution is not necessary.

**12.** Shortly before this Opinion was released, the Secretary withdrew a fourth argument for plaintiffs' complaint to be dismissed. The Secretary had asserted that this Court lacked subject matter jurisdiction pursuant to section 6305(b) of the Internal Revenue Code of 1954.

In their response, plaintiffs assert that sovereign immunity does not bar their action because 26 U.S.C. § 7422 and 28 U.S.C. § 1346 grant district courts jurisdiction for suits against the United States for funds wrongfully collected, and because government officials acting beyond the scope of their authority and unconstitutionally or acting pursuant to an unconstitutional statute may be sued in federal court. *Citing, Eastern Kentucky Welfare Rights Org. v. Simon,* 506 F.2d 1278 (D.C.Cir.1974).

As sovereign, the United States of America is immune from being sued without its consent. The consent of the United States can only derive from an Act of Congress which explicitly waives immunity. *E.g., Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Government officials, however, can be sued in their official capacity absent an expressed waiver of Congress in two situations: (i) where the official acted outside his statutory authority; and (ii) where the statute or order conferring power upon the official is claimed to be unconstitutional. *Larson v. Domestic Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 1461–1462, 93 L.Ed. 1628 (1949).

As far as plaintiffs' cursory complaint can be read, it appears to be challenging the constitutional validity of 42 U.S.C. § 664 and 26 U.S.C. § 6402 under the due process clause of the Fifth and Fourteenth Amendments. Therefore, plaintiff is permitted to sue Donald Regan in his official capacity as Secretary of the Treasury due to his implementation and enforcement of those allegedly unconstitutional statutes. *Larson v. Domestic & Foreign Commerce Corp., supra,* 337 U.S. at 690, 69 S.Ct. at 1461; *Eastern Kentucky Welfare Rights Organization v. Simon, supra,* 506 F.2d at 1282–83 (applying *Larson* doctrine to Department of Treasury and IRS officials). The Secretary is correct in noting, however, that the Supreme Court has limited the actions which can be brought against an official exercising power under a claimed unconstitutional statute to actions enjoining future conduct. In *Larson v. Domestic & Foreign Commerce Corp., supra,* 337 U.S. at 691, n. 11, 69 S.Ct. at 1462 n. 11, the Court recognized that requiring affirmative action or the disbursement of government funds was an action against the sovereign which cannot be brought unless Congress expressly consented.[13] Thus, to the extent plaintiffs request the Secretary be enjoined from administering prospectively the refund transfer program they can maintain their action against the Secretary. To the extent plaintiffs request damages, they are barred unless immunity has been waived.[14]

---

**13.** The Supreme Court stated:

Of course, a suit may fail, as against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.

*Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 691, n. 11, 69 S.Ct. 1457, 1462 n. 11, 93 L.Ed. 1628 (1949), *citing, North Carolina v. Temple,* 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849 (1890).

**14.** See Page 14.

Another issue which arises under the question of governmental immunity was not addressed by either party, but is nonetheless significant because of its presence in the complaint. Plaintiffs have claimed an amount represented by the refund which was transferred to the State. In essence, the complaint requests a tax refund. This can be seen in plaintiffs' brief in their arguments regarding governmental immunity. The plaintiffs stated that: "This action seeks recovery of a sum alleged to have been erroneously or wrongfully collected by the United States under a section of the Internal Revenue laws." Plaintiffs' Brief at page 2. Plaintiffs cite 28 U.S.C. § 1346(a)(1) as expressly allowing such a suit in district court. The problem is that the procedures established under 26 U.S.C. § 7422, requiring a filing for a refund with the Secretary, must be followed in order for the Court to have jurisdiction under 28 U.S.C. § 1346(a)(1), and the plaintiffs have not done so

The plaintiffs have not cited and the Court is not aware of any congressional act which would permit such an action for damages. Congressional waiver of sovereign immunity is to be construed strictly and applied narrowly. *Lehman v. Nakshian, supra,* 453 U.S. at 161, 101 S.Ct. at 2701; *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *United States v. Sherwood, supra,* 312 U.S. 584 at 590–91, 61 S.Ct. 767, at 771–772, *Overman v. United States,* 563 F.2d 1287 (8th Cir.1977) (fact that sovereign immunity has been removed in one limited area does not reflect a broader intent to remove sovereign immunity in areas not specifically provided); *Bruno v. United States,* 547 F.2d 71 (8th Cir.1977) (generally, statutes in derogation of sovereignty are strictly construed in favor of the sovereign). Congress' waiver of immunity in Section 1346 for refunds of IRS collections cannot be interpreted by this Court to imply a general waiver of immunity which would allow a suit for damages. *See e.g., Lehman v. Nakshian, supra, Overman v. United States, supra; Brockelman v. Brockelman,* 478 F.Supp. 141, 143–44 (D.Kan.1979). ("These statutory waivers for certain delineated actions cannot be construed as a general waiver of immunity for the IRS.") Hence, although the doctrine of sovereign immunity does not bar plaintiffs' action in regards to injunctive relief prohibiting future implementation of 42 U.S.C. § 664, sovereign immunity does prohibit their action for damages.[15] Therefore, plaintiffs' claim for damages against the Secretary must be dismissed.[16]

The Secretary also argues that the Anti-Injunction Act, 26 U.S.C. § 7421(a) and the Declaratory Judgments Act, 28 U.S.C. § 2201, prohibit plaintiffs' suit because it interferes with taxation procedures. The Anti-Injunction Act states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." Similarly, the Declaratory Judgments Act prohibits seeking declarations "with respect to Federal taxes." The Secretary contends that both of the Acts bar plaintiffs' actions for declaratory and injunctive relief and that their complaint should be dismissed.

The Secretary's argument is without merit because it mischaracterizes the nature of plaintiffs' suit. Plaintiffs are not requesting that this Court interfere with the assessment and collection process of the IRS. Such action is clearly prohibited by the Anti-Injunction Act which is designed to "permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund [after the seizure of the payment]." *Enochs v. Williams Packaging & Navigation Co., Inc.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). *See e.g., F.E.A. v. Algonquin SNG, Inc.,* 426 U.S. 548, 558 n. 9, 96 S.Ct. 2295, 2301 n. 9, 49 L.Ed.2d 49 (1976). By prohibiting judicial interference until after the money is collected, Congress insured that the government will be able to obtain funds expeditiously. As the courts have long recognized, the government has a vital interest in the assessment and collection of taxes with a minimum of preenforcement interference. *E.g., Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974). Plaintiffs' suit does not possess the threat to anticipated government revenues as an action to

---

in this case. *See e.g., Zernial v. United States,* 714 F.2d 431 (5th Cir.1983); *Kent v. Northern California Regional Office of American Friends Service Committee,* 497 F.2d 1325 (9th Cir.1974); *Theophelis v. United States,* 571 F.Supp. 516 (E.D.Mich.1983); *Jorrie v. Imperial Investment Co.,* 355 F.Supp. 1088 (W.D.Tex.1973). However, since the parties have not adequately addressed this issue, and since the plaintiffs are claiming the refund from the State also, the Court need not pass on this issue.

**15.** *See generally Seibert v. Baptist,* 594 F.2d 423 (5th Cir.1979); *White v. Comm'r of Internal Revenue,* 537 F.Supp. 679 (D.Colo.1982).

**16.** *See Nelson v. Regan,* 560 F.Supp. 1101, 1103–04 (D.Conn.1983); *Sorenson v. Secretary of Treasury,* 557 F.Supp. 729, 732–33 (N.D.Wash. 1982).

enjoin the assessment and collection of taxes. *See Bob Jones University v. Simon, supra.* Instead, plaintiffs are challenging the IRS procedure of *transferring* funds which have already been assessed and collected to the State. Hence, the Anti-Injunction Act does not apply to the instant action.[17] *See Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn.1983); *Sorenson v. Secretary of Treasury,* 557 F.Supp. 729 (W.D.Wash. 1982).

■ The prohibition in the Declaratory Judgments Act is likewise inapplicable, whether that Act is interpreted with the co-extensive effect of the Anti-Injunction Act or not.[18] The Declaratory Judgments Act prohibits suits "with respect to Federal taxes." Plaintiffs are not seeking a declaration with respect to federal *taxes,* but are challenging the IRS procedure of *transferring* their joint tax overpayment to the

State. The tax has been assessed and collected and the IRS taxing procedure, which is the focus of the Declaratory Judgments Act's prohibition, has been completed. *See Bob Jones University v. Simon, supra.* As stated in *Nelson v. Regan, supra,* 560 F.Supp. at 1103:

> [T]he federal-state intercept program takes effect only after the assessment and collection of federal income taxes. The federal government at that point has no interest in the refunds. No substantial governmental purpose related to taxes would be served by prohibiting either injunctive or declaratory relief in this case.

Therefore, plaintiffs' action is not barred by the Anti-Injunction Act or the Declaratory Judgments Act's prohibition because they are not applicable to plaintiffs' suit.[19]

**17.** The Secretary offered another reason for the inappropriateness of injunctive relief shortly before the release of this Opinion. The Secretary claims that equitable relief is improper since the plaintiffs have an adequate remedy at law. According to the Secretary, the plaintiffs can seek a refund from the Secretary pursuant to 26 U.S.C. § 7422 and their constitutional claims may be litigated in the refund suit. There are several problems with this argument. Foremost, section 7422 is part of a procedure for a taxpayer to claim a refund for the wrongful assessment and collection of taxes. The injunctive aspect of plaintiffs' case does not involve obtaining money already paid to the government, but seeks to prevent the further use of 26 U.S.C. § 6402(c). Plaintiffs are not challenging the assessment or collection of taxes, but the section 6402 method of *transferring* refunds to the State. Section 7422 and the refund procedures do not nor were they intended to address challenges to the transfer of tax refunds. *See e.g., Sorenson v. Secretary of Treasury,* 557 F.Supp. 729, 733 (W.D.Wash.1982).

The Secretary's argument confuses basic equitable principles. The Secretary does not assert that injunctive relief is totally inappropriate in this case because there are adequate *legal remedies.* Instead, he claims that since there is a refund procedure, plaintiffs can seek an injunction through that procedure and in that *forum.* The government has not, however, provided any authority in support of that proposition.

**18.** Despite cases such as *Eastern Kentucky Welfare Rights Org. v. Simon,* 506 F.2d 1278, 1285 (D.C.Cir.1974) which have held the tax exemption provision of the Declaratory Judgments Act

and the Anti-Injunction Act were intended to be coterminous, the Secretary argues that the difference in language between the Acts illustrates Congress' desire that Declaratory Judgment should bar not simply the assessment and collection of taxes, but any suit touching upon the tax procedure. Although the Court finds this distinction dubious due to the history of the two forms of relief and that declaratory judgments are generally considered no more intrusive, and even less intrusive, than injunctive relief, *see e.g., Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Court need not rule on this matter since plaintiffs are not bringing a suit regarding taxation procedures.

**19.** The court in *Vidra v. Egger,* 575 F.Supp. 1305 (E.D.Pa.,1982) reached the contrary result, ruling a suit of this nature would be barred by the Anti-Injunction Act and the no-suit-before-filing-for-refund statute, 26 U.S.C. § 7422(a). The plaintiff's complaint in *Vidra* appears to be framed much differently than plaintiffs in the instant case, or the *Vidra* court does not appear to have fully appreciated the issues presented in these actions. On page 4 of the *Vidra* opinion the court stated: "The essential thrust of plaintiffs' Complaint is that they overpaid their taxes and are entitled to a refund from IRS." The plaintiffs in the instant case are not simply claiming an entitlement to refund due to overpayment, the IRS recognized their overpayment and their entitlement to a refund, they are challenging the *transfer* of their refund to the State instead of to them. This crucial distinction has been recognized by other district courts passing on this issue. *Jones v. Ritsema,* No. 82–73574 (E.D.Mich. February 24, 1983) (Gilmore, J., rul-

## III. SECRETARY OF THE STATE DEPARTMENT OF SOCIAL SERVICES MOTION TO DISMISS

The Secretary of the State Department of Social Services and the State of Michigan (the "State") have brought a Motion for Judgment on the Pleadings or in the Alternative a Motion for Summary Judgment claiming that as a matter of law plaintiffs have not stated a claim in their two count complaint and that it should be dismissed.

Count one of plaintiffs' complaint against both the State and the Secretary of the Treasury asserts that plaintiffs' 1981 joint tax overpayment constitutes a chose in action owned by plaintiffs jointly and as tenants by the entireties and exempt from attachment or taking to satisfy the debts of one of the owners. Accordingly, plaintiffs charge both defendants with wrongfully converting their property.

■ Under Michigan law a tenancy by the entireties can only be created in personal property by statute. *E.g., Scholten v. Scholten,* 238 Mich. 679, 214 N.W. 320 (1927); *Wait v. Bovee,* 35 Mich. 425 (1877); *Guldager v. United States,* 204 F.2d 487 (6th Cir.1953). Cf. *DeYoung v. Mesler,* 373 Mich. 499, 130 N.W.2d 38 (1964). The State and the Secretary of Treasury both contend that the first count of plaintiffs' complaint must be dismissed because the Michigan Legislature has not established joint tax overpayments on personal property owned by tenants in the entireties.

■ Plaintiffs assert, on the other hand, that Michigan has recognized such ownership for this "joint indebtedness" owed a husband and wife in Michigan Compiled Laws Annotated ("M.C.L.A.") § 557.151. Section 557.151 provides:

> All bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidence of indebtedness hereafter made payable to persons who are husband and wife, or made payable to them as endorsees or assignees, or otherwise, shall be held by such husband and wife in joint tenancy unless otherwise therein expressly provided, in the same manner and subject to the same restrictions, consequences and conditions as are incident to the ownership of real estate held jointly by husband and wife under the laws of this state, with full right of ownership by survivorship in case of the death of either.

Plaintiffs appear to be arguing that a joint tax overpayment is "other evidence of indebtedness" within the statute and, therefore, owned by them as tenants by the entireties. The plaintiffs have not cited, however, nor could the Court locate any cases supporting plaintiffs' interpretation.[20] In fact, the few precedents which have touched upon this issue would indicate the contrary.

In *Hiller v. Olmstead,* 54 F.2d 5 (6th Cir.1931), the Sixth Circuit rejected plaintiff's argument that "evidence of indebtedness" included a fire insurance policy held by both husband and wife, either before or after the insurance company's liability was established. The court ruled:

> Not only would the happening of an event which created contract liability not convert such contract into an "evidence of indebtedness" if it had not such character before, thus changing its very nature, but it is manifest that the words

ing from the bench); *Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn.1983); *Sorenson v. Secretary of Treasury,* 557 F.Supp. 729 (1982).

**20.** Plaintiffs cite *DeYoung v. Mesler,* 373 Mich. 499, 130 N.W.2d 38 (1964) and *Albinak v. Kuhn,* 149 F.2d 108 (6th Cir.1945) to support their contention that a joint tax overpayment or refund is an "evidence of indebtedness", but neither of those cases is helpful. In *DeYoung* the Michigan Supreme Court applied M.C.L.A. 557.-151 to a debenture and ruled that a tenancy by the entireties was created by statute. A debenture is specifically listed in the statute as one of the items which would evoke this kind of joint ownership. The *DeYoung* opinion did not touch up the breath of the statute or the scope of the phrase "other evidences of indebtedness". The *Albinak* decision is even less helpful. In *Albinak* the Sixth Circuit merely recognized the Michigan rule that a title to real property "validly residing in husband and wife may not involuntarily be sold or encumbered for the debts of either." 149 F.2d at 109.

"evidence of indebtedness", as used in the statute, refer only to instruments of the same general nature as bonds, mortgages, notes, and debentures with which they are associated. The maxim noseitur a sociis applies.

54 F.2d at 7. A tax refund or overpayment for a jointly filed tax return cannot be reasonably characterized as an "evidence of indebtedness" in the same manner as a mortgage or a bond.[21] The refund plaintiffs are pursuing is not a document of indebtedness of the government. It is not even a negotiable instrument made payable to them. Therefore, plaintiffs' joint tax overpayment is not within M.C.L.A. § 557.-151 and not held by them as tenants by the entireties.

■ Even if Michigan law had clearly established that a federal joint tax overpayment was held by plaintiffs as tenants by the entireties, federal supremacy would overcome the State's characterization and avoid this co-ownership doctrine. Federal supremacy mandates that Section 6402 of the Internal Revenue Code control over any contrary State law in two ways.

First, Congress intended that the IRS and the states be able to use the federal tax overpayment of an individual owing past-due child support to the State whether or not the overpayment results from a joint tax return. The statute establishing the transfer program states:

"... the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (*regardless of whether such individual filed a tax return as a married or unmarried individual*). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such returns an amount equal to the past-due support ..."

42 U.S.C. § 664(a) (emphasis supplied).[22] Therefore, since Congress intended that *an individual's* tax overpayment be used to satisfy his debt to the State for child support regardless of his filing a federal joint tax return,[23] then a state law which would prohibit or interfere with the use of the overpayment would be void pursuant to the Supremacy Clause of the Constitution, Art. VI, Sec. 2. *See e.g., Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (state law void when conflicts with federal law and stands as obstacle to congressional purposes and objectives); *Fidelity Federal Savings & Loan Association v. Del la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Maryland v. Louisiana,* 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); *Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc.,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963).

Second, federal courts and the Internal Revenue Service have consistently held that husbands and wives who file joint returns have separate interests in any refund based on the extent to which their respective income contributes to the refund. *E.g., Gens v. United States,* 615 F.2d 1335, 222 Ct.Cl. 407 (1980); *Rosen v. United States,* 397 F.Supp. 342 (E.D.Pa.1975); *Glaubke v. United States,* 41 A.F.T.R.2d 78–759 (D.Va.1978); Rev.Rul. 74–611, 1974–2 C.B. 399. Therefore, an attempt by the State to re-characterize the respective interests of both spouses in a federal joint tax refund for the purposes of a federal program, would likewise be void under the Supremacy Clause. *See e.g., Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission, supra; Fidelity Federal Savings & Loan Association v. Del la Cuesta, supra;*

---

**21.** *See generally, Hendricks v. Wolf,* 279 Mich. 598, 273 N.W. 282 (1937); *McMahon v. Holland,* 260 Mich. 246, 244 N.W. 462 (1932).

**22.** *See, supra,* note 2.

**23.** Even plaintiffs in their response brief to the State's Motion conceded that this was Congress'

intention. On pages three and four of their argument plaintiffs quoted 42 U.S.C. § 664(a) & (c) and 26 U.S.C. § 6402(c) and stated: "These provisions specifically direct the Secretary of the Treasury to ignore the consideration of whether the tax return was filed jointly by a married individual."

*F.E.R.C. v. Mississippi*, 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982); *Maryland v. Louisiana, supra; Moore v. Colautti*, 483 F.Supp. 357 (E.D.Pa.1979), *aff'd*, 633 F.2d 210 (3rd Cir.1980).

Hence, since plaintiffs do not hold the 1981 joint tax return as tenants by the entireties and since federal Supremacy would prohibit any state law characterization of their joint return being held by such co-ownership so as to bar its use in satisfaction for past-due child support, the first counts of plaintiffs' complaints against the State and the Secretary of Treasury must be dismissed for failure to state a claim.

The State also asserts that count two of plaintiffs' complaint must be dismissed for failure to state a claim against defendant Kheder, the Director of the State Department of Social Services, and the State of Michigan based upon any alleged deprivation of property without due process of law. Since the validity of a government procedure depends upon the circumstances or context of that program to determine its conforming to due process standards,[24] the Court must treat the State's motion, as it requested in the alternative, as a motion for summary judgment. *See* Fed.R.Civ. Pro., Rule 12(c). In support of its motion, the State submitted the affidavit of Marc Rodgers who is the Manager of the Administrative Operations Division of the Office of Child Support within the Michigan Department of Social Services. Rodgers stated that based upon his personal knowledge, letters of the friend of the court which detailed the procedures for implementing child support enforcement procedures required under Title IV–A and IV–D of the Social Security Act, 42 U.S.C. §§ 601 *et seq.* and 651 *et seq.* accurately stated the actual procedures used in 1981–83. Plaintiffs offered no affidavits or other evidence to contradict the facts presented by defendant as required under the rule to show a dispute of material facts. Fed.R.Civ.Pro., Rule 56(c).

The Rodgers' affidavit and the letters of the friend of the court are competent methods of establishing the facts as to the procedures used by the government in regard to the tax overpayment transfer program. *See e.g., Pollack v. City of Newark*, 147 F.Supp. 35, 39 (D.N.J.1956), *aff'd*, 248 F.2d 543 (3rd Cir.1957), *cert. denied*, 355 U.S. 964, 78 S.Ct. 554, 2 L.Ed.2d 539 (1958); C. Wright & A. Miller, *Federal Practice and Procedure*, § 2721 at 40–46 (1983). Rodgers' affidavit and the exhibits introduced through Rodgers, however, do not establish the particular procedures used in the withholding of plaintiffs' 1981 joint tax overpayment. Instead, they establish the general procedures used to withhold all appropriate 1981 tax overpayments. Such evidence might be inappropriate for the Court to determine that no genuine issue of material facts existed, even absent the introduction of opposing evidence on the part of plaintiffs. *See Adicks v. S.H. Kress & Co.* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Higgins v. Baker*, 309 F.Supp. 635, 639 (D.C.N.Y.1970); C. Wright & A. Miller, *supra*, § 2739 at 523–28. But plaintiffs do not argue that the procedures the State introduced were not implemented in their case. In fact, in their response brief plaintiffs adopted the State's account of the procedures used. It is clear from their response arguments to this motion and their complaint, that the purpose of plaintiffs' suit is to challenge the adequacy of the government's procedures as the State set them forth in this motion. Plaintiffs are contending that those procedures were in violation of procedural due process. Plaintiffs do not state that Patrick Jahn was not in arrears in the child support he owed the State of Michigan, or that the friend of the court certified an erroneous amount. Given plaintiffs' posture, the Court can assume that the general procedures the State has set forth were employed in the withholding and transfer of plaintiffs' 1981 joint tax return.

---

**24.** *See e.g. Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Cafeteria Work-* *ers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1960).

As to the merits, the State initially argues that plaintiffs are claiming the IRS withholding of their tax refund is the procedure which violates due process. Therefore, according to the State, plaintiffs' cause of action is against the IRS and not against the State "which takes no part in the tax refund process". State's Brief in Support at 10. Similarly, the State argues that if the basis of plaintiffs' complaint is the procedure whereby the IRS withholds portions of the tax refund attributable to Melba Jahn's income, rather than just the portion attributable to Patrick Jahn's income, then plaintiffs' claim likewise is against the IRS which established the procedures for handling joint tax returns and not the State. Furthermore, the State asserts that since it followed all the procedures, rules, and regulations, established by the federal government, it is the federal government which may have violated plaintiffs' rights by not establishing adequate procedures.

Basically, the State characterizes its participation in this program as a passive one—merely a link in the federal chain of child support collection. This position is unacceptable. Although the AFDC is established by Congress, the program provides that participants must assign any right to child support to the State. The State has the primary role of the collection of these funds. *See* 42 U.S.C. § 602(a); S.Rep. No. 93–1356, 93rd Cong., 2nd Sess. reprinted in 1974 Code Cong. & Ad.News 8133, 8150.[25] In Michigan, the friend of the court is charged with this responsibility. He is to make reasonable attempts at collection before utilizing the withholding method challenged here. It is the friend of the court and the Michigan Department of Social Services which decide to use this method of collection and initiate the procedures which result in the tax refund being withheld.

Generally, procedural due process consists of a right to notice and an opportunity to be heard.[26] If a notice prior to the withholding is required, it may be that the friend of the Court should send this notice to a delinquent party when he initiates this method of collection. Even more compelling, however, if due process requires a formal or informal hearing either before or after the withholding and transfer to the State, that hearing would be of little value if the agency responsible for the account and the collection of the arrearage did not participate in or conduct such a hearing. In other words, if due process does require notice and an opportunity to be heard, it might fall upon the State to provide these guarantees, since it is responsible for the collection of the child support, it initiated the procedures which resulted in the transfer of the refund, and it received the refunds in satisfaction of an outstanding debt. The concerted actions of the State and Federal governments are implicated by plaintiffs cause of action; therefore, the State cannot be dismissed from this case.

Next, the State argues that the procedures implemented regarding the holding and transfer of plaintiffs' 1981 joint tax return were in conformance with due process. According to the State, the procedures used by it and the IRS are as extensive as those upheld in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and *Mitchell v. W.T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Hence, the State requests that the Court find that based upon the facts presented, no due process violation occurred and plaintiffs' complaint should be dismissed.

Plaintiffs, on the other hand, contend that the State misunderstands the standards of *Mathews* and *Mitchell* and, in any event, those cases are not applicable to the circumstances of the instant case. Instead, plaintiffs assert that the standards set forth in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23

**25.** *See supra,* note 1.

**26.** *E.g., Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Joint Anti-Fas-*

*cist Comm. v. McGrath,* 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–649, 95 L.Ed. 817 (1950) (Frankfurter, J. concurring).

L.Ed.2d 349 (1969) and *North Georgia Finishing v. Di-Chem,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) control.

 Each of these arguments only partially appreciates the issues presented and the rights involved. Both sides identify the rights of Patrick Jahn and Melba Jahn as being identical. From this perspective, the State argues the adequacy of the procedures commensurate with the rights of a postjudgment debtor. While plaintiffs form their arguments around the standards applied to the seizing of property of a prejudgment debtor. The problem with these arguments is that Patrick Jahn and Melba Jahn do not stand in the same position as far as procedural due process is concerned. A postjudgment debtor is not due the same process as a prejudgment debtor. *Compare Endicott Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924) *with Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Generally, a postjudgment creditor is not entitled to notice and opportunity to be heard before the seizure of the property.[27] A prejudgment debtor on the other hand, is guaranteed greater protection by the procedural due process doctrine. *See, e.g., Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant, supra, Sniadach v. Family*

*Finance Corp., supra.* Therefore, in assessing the due process rights of plaintiffs, their position in regard to a judicial determination that Patrick Jahn must pay child support is crucial.

 This distinction is important initially because Patrick and Melba Jahn have separate rights in their 1981 joint tax return. Each earned income in 1981 and each had withholdings from their wages in excess of the tax they actually owed. Thus a certain portion of the tax refund is derived from Melba's wages, and in this case, a greater portion is derived from Patrick's income. Although the tax overpayment is paid in one sum to both individuals, Melba's withholding refund is separate and distinct from Patrick's portion of the refund. *See, e.g., Gens v. United States, supra; Rosen v. United States, supra; Glaubke v. United States, supra;* Rev.Rul. 74–611, 1974–2 C.B. 399.[28]

Patrick Jahn is a postjudgment debtor, since a valid judgment that he owes child support has been entered against him. Melba Jahn has no such judgment against her. No court has determined that Melba owes the State any sums of money and the State does not claim so. Clearly, Melba Jahn is entitled to greater protection than Patrick Jahn, a postjudgment debtor. In fact, she should even be entitled to greater protection than a prejudgment debtor, since

---

**27.** In *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), the Court held that due process does not require post-judgment garnishment procedures to provide a debtor with notice of hearing before garnishment. The Court reasoned that the underlying proceeding acted as constructive notice to the debtor that the creditor would execute on the debtor's property:

> the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take notice of what will

584 F.Supp.—11

follow, no further notice being necessary to advance justice.

*Id.,* at 288, 45 S.Ct. at 62–63. The reasoning of *Endicott* has governed the area of post-judgment garnishment. *See, e.g., Halpern v. Austin,* 385 F.Supp. 1009 (N.D.Ga.1974); *Katz v. Ke Nam Kim,* 379 F.Supp. 65 (D.Haw.1974); *Langford v. Tennessee,* 356 F.Supp. 1163 (W.D.Tenn.1973); *Moya v. DeBaca,* 286 F.Supp. 606 (D.N.M.1968); *appeal dismissed,* 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969); *Agnew v. Cronin,* 148 Cal. App.2d 117, 306 P.2d 527 (1957); *District Credit Clothing, Inc. v. Square Deal Trucking Co.,* 163 A.2d 822 (D.C.Mun.App.1960); Note, *Due Process, Postjudgment Garnishment, and "Brutal Need" Exemptions,* 1982 Duke L.J. 192; Note, *D.P. Requires Notice of Exemptions and A Prompt Postseizure Hearing for Postjudgment Garnishment,* 40 Missouri L.Rev. 857 (1981).

**28.** *See, supra,* discussion concerning tenants by the entireties.

she owes nothing to the State. Hence, a proper procedural due process analysis requires analyzing the rights of Patrick Jahn separately from Melba Jahn.

First, as to Patrick Jahn's procedural rights. As mentioned, generally a post-judgment creditor is not entitled to notice and an opportunity to be heard before the seizure or attachment of his property by a judgment creditor.[29] The circumstances of this case do not dictate a departure from that rule. In order to obtain a debtor's tax refund the friend of the court was required to certify the amount and accuracy of arrearage.[30] The only question is the amount of the arrearage support. Because of the simplicity of the question and the low likelihood of error—e.g. this is not a situation where the friend of the court is determining issues of credibility which may require an evidentiary hearing—a preseizure hearing is not necessary. See e.g., Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Transco Security, Inc. v. Freeman, 639 F.2d 318, 322 (6th Cir.), cert. denied, 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981). Likewise, notice before the IRS determines that the debtor is entitled to a tax refund would be superfluous. This is particularly true considering the postseizure procedures available to the debtor.

Patrick Jahn received notice of the withholding immediately after the IRS determined he was entitled to a refund. See Plaintiffs' Complaint, ¶ 10.[31] This notice informed him of the purpose of the withholding and that if he questioned the propriety of the sums involved or the extent of his obligation he should contact the Office of Child Support. If Patrick Jahn had contacted the Office of Child Support he would have been notified by the friend of the court responsible for monitoring his debt and how to get in touch with that official. The established procedures further provided that if an error had been discovered, the friend of the court would document the mistake to the State and the debtor would receive that portion of his tax refund wrongfully obtained.

Although plaintiffs contend that a formal evidentiary hearing before a neutral magistrate is necessary, clearly the Constitution does not require such procedures. In fact, the postseizure process the government established was constitutionally adequate for anyone in Patrick Jahn's situation as a debtor. The paradigm for testing the adequacy of government procedures was established by the Supreme Court in Mathews v. Eldridge, supra.[32] The Court identified three factors that must be weighed to determine a procedure's conformity to due process:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-

29. See, supra, note 27 and accompanying text.

30. In their brief, plaintiffs question the adequacy of the friend of the court's certification that he attempted other reasonable methods of collection without definition of the term "reasonable methods". The term, however, is not uncommon and the large and varied number of methods available would require an unnecessary laundry sheet of collection procedures.

31. The notice was provided pursuant to 26 U.S.C. § 6402 and 45 C.F.R. § 303.72(f)(2), formerly, 45 C.F.R. § 303.72(f).

32. Plaintiffs argued that Eldridge is not applicable because it involved "disability benefits which are paid by the government only as long as the worker is disabled. The present facts involve property which undisputably belongs to the plaintiffs without any adverse claim." Plaintiffs' Brief in Support at 6. This "distinction" does not mandate the application of the Eldridge test and analysis, but is merely a factor which may be weighed in the Eldridge inquiry. The Eldridge Court recognized that the complainant had a "property" interest in the benefits. 424 U.S. at 332, 96 S.Ct. at 901. Having determined that, the Court then set out the analysis required to determine whether the process provided was in conformity with the Constitution. Id. 334–35, 96 S.Ct. at 902–903.

guards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. at 335, 96 S.Ct. at 903.

First, Patrick Jahn's interest in his portion of the 1981 overpayment attributable to him is, of course, significant. The debtor may suffer a noticeable difference in his standard of living without the refund. This burden, however, is not akin to those whose welfare [33] or Social Security benefits,[34] or wages [35] were denied them. Typically, the funds constituting a tax refund have *never been* in the taxpayer's possession. Tax refunds normally take some time to be determined and sent to the taxpayer. Therefore, although the taxpayer certainly has significant interest in the funds, his interest is not one hinged on the *immediacy* of receiving the refund. The delay occasioned by the correction period is not oppressive.

As to the second *Eldridge* factor, the need for additional safeguards to prevent error, in order to have a withholding and transfer of the overpayment to the State the friend of the court must certify the amount and accuracy of the arrearage. The friend of the court, although not a neutral participant, is nonetheless an officer of the state circuit court which imposed the support obligation and who is statutorily required to keep records of accrued support and arrearages. *See* Mich.Comp.Laws Ann. §§ 552.251 & .252; *see also, supra,* note 3. As mentioned, since the amount of arrearage is simply a matter of record-keeping there is very little risk of error which would require a preseizure hearing.

Similar reasoning applies for the need for a postseizure formal hearing. Since the only issue Patrick Jahn can raise is whether the amount of arrearage is accurate or not, a formal hearing is certainly not required. *E.g., Mathews v. Eldridge, supra,* 424 U.S. at 343–45, 96 S.Ct. at 907–908; *Transco Security, Inc. v. Freeman, supra,* 639 F.2d at 322. Moreover, the State procedure provided that the taxpayer/debtor be able to contact the friend of the court responsible for his account who had the authority to make any necessary correction in the arrearage figure and who could commence procedures for return of any sums wrongfully withheld.[36] Furthermore, in addition to the informal procedures provided, the debtor also has the right to challenge any arrearage determination through the State Circuit Courts and to have an arrearage cancelled. *See* M.C.L.A. §§ 552.16–.17a. In sum, no further procedural safeguards were necessary because of the low-risk of error, the simplicity of the issues, the authority of the friend of the court and the recourse to the state circuit court.

Third, as to the State government's interest, the State has a significant financial interest in obtaining payment in accordance with the court-ordered support obligations. The money collected is to repay the state for AFDC benefits which have been paid by the State to the taxpayer's indigent ex-spouse or children. The transfer method enables the State to retrieve substantial sums which reasonable collection methods could not produce.[37] This money can then be made available to meet the urgent needs of other welfare recipients or indigent individuals in the State.[38] Additional procedures such as a formal hearing as plaintiffs

---

**33.** *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**34.** *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975).

**35.** *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

**36.** The instant case differs from *Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn.1983), where the Family Relations Officer did not have authority

to correct errors and return funds wrongfully withheld.

**37.** In his affidavit, Marc Rodgers asserted that for the 1981 tax year, 59,931 support arrearage cases were certified to the federal government for IRS offset. The total AFDC support arrearage totalled $304,086,000. Of that amount, the net collections for the tax year 1981 through the IRS offset procedure totalled $19,637,441.

**38.** *See, supra,* note 37.

suggest, would only unnecessarily waste resources which could be used to further AFDC programs to help the needy more expeditiously. *See Mathews v. Eldridge, supra,* 424 U.S. at 347–49, 96 S.Ct. at 908–909.[39] Most significantly, plaintiffs have offered no evidence nor argument which would suggest that if a taxpayer/debtor questioned the amount of his arrearage to the friend of the court, he would not be "given a meaningful opportunity to present [his] case." *Id.* at 349, 96 S.Ct. at 909.[40] These facts warrant a finding that additional procedural burdens need not be imposed on the State.

All due process requires "is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard." *Mathews v. Eldridge, supra,* 424 U.S. at 349, 96 S.Ct. at 909. The notice and opportunity to be heard offered Patrick Jahn by the State, considering that he was in the position of a postjudgment debtor, were in conformity with procedural due process. Therefore, the State's Motion for Summary Judgment on plaintiffs' second count of their complaint should be granted in regard to Patrick Jahn and all Patrick Jahn's claims against the State should be dismissed.

■ Melba Jahn, on the other hand, is in a significantly different position than her husband regarding their 1981 joint tax re-

**39.** In *Eldridge* the Court stated:

> In striking the appropriate due process balance the final factor to be assessed is the public interest. This includes the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right, an evidentiary hearing upon demand in all cases prior to the termination of disability benefits. The most visible burden would be the incremental cost resulting from the increased number of hearings and the expense of providing benefits to ineligible recipients pending decision....
>
> Financial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision. But the Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed. At some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost. Significantly, the cost of protecting those whom the preliminary administrative process has identified as likely to be found undeserving may in the end come out of the pockets of the deserving since resources available for any particular program of social welfare are not unlimited....
>
> But more is implicated in cases of this type than ad hoc weighing of fiscal and administrative burdens against the interests of a particular category of claimants. The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness. We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the origin and function of administrative agencies preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts.... The Judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances.

424 U.S. at 347–48, 96 S.Ct. at 909. Considering the unconverted figures presented by Marc Rodgers, *see, supra,* note 37, the fact that the funds from the offset program were collected when other reasonable methods failed, the great need for AFDC funds, and the position of a postjudgment debtor who has been unable and probably unwilling to satisfy his child support obligation, the added financial burden for additional procedures, which result in a lower net figure of recovered funds does not appear to be warranted.

**40.** It is true that a prompt hearing, informal or otherwise, was not provided in this case as required by such cases as *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Those cases, however, primarily concerned prejudgment seizure of property. The instant cases involves a postjudgment seizure. More importantly, the instant case is not the typical collection situation where a private corporation or individual is seeking satisfaction of a debt for their own private interest. This case involves government officials, having certain duties and responsibilities to the public, who seek to collect money owed in order to maintain proper funding for a program for the needy. Although these officials do not have the neutrality of a judge or magistrate, they certainly do not have the same motivations and purposes which might be attributed to a private individual pursuing his own financial interests. *See Mathews v. Eldridge, supra,* 424 U.S. at 349, 96 S.Ct. at 909.

fund and procedural due process. Melba has no judgment for child support against her, nor is the State seeking money to satisfy any debt *she* owes, prejudgment or otherwise. The portion of the joint refund attributable to her was seized by the government not because of any debt or obligation on her part, but simply because she filed her tax form jointly with her husband. Clearly, due process affords greater protection for Melba, than her husband Patrick. However, she actually received fewer procedural safeguards.

The notice the IRS sent in 1982 informing a taxpayer/debtor of the withholding of his 1981 refund in satisfaction of his child support obligation, does not even mention that if they filed a joint tax return and the wife was entitled to a refund based on her income, she could seek return of that share. In fact, the IRS notice does not even mention joint tax filing or refunds. Not until the taxpayers contacted the Michigan Office of Child Support were they informed of procedures for the unobligated spouse to obtain her share of the refunds. The cumulative effect of these notices deprived Melba Jahn, and those similarly situated, of any knowledge that her property rights had been infringed until long after it had been seized and transferred to the State. Clearly, the purpose of requiring notice—to alert individuals that their interests are being affected and to permit adequate preparation to challenge those activities—was defeated by the government's conduct and Melba Jahn's rights violated. *See e.g., Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1949); *Transco Security, Inc. v. Freeman,* 639 F.2d 318 (6th Cir.) *cert. denied,* 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981); *Sorenson v. Secretary of Treasury,* 557 F.Supp. 729 (W.D.Wash.1982).

The inadequacy of the notices and the procedures established for informing a taxpayer that she had a right to her portion of the joint refund compounded the deficiencies of the process to obtain the refund. Once the unobligated spouse finally learned that she could obtain her refund, she had to refile 1040X form and wait for a refund. This procedure led to a further delay in freeing funds the State wrongfully held. Certainly, no concept of fairness embodied in due process would require this onus and on the unobligated taxpayer and this delay to retrieve funds rightfully hers. *See Sorenson v. Secretary of Treasury, supra.*[41]

Therefore, from the facts presented, Melba Jahn does appear to have a claim that her due process rights were violated and the State's Motion for Summary Judgment in regard to Melba Jahn must be DENIED.

IT IS SO ORDERED.

APPENDIX NO. 1

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE

CINCINNATI, OH 45999

In reply refer to: 17440433
(Date ) LTR 1621C 0028
(SS # )

---

**41.** This ruling is not intended to suggest that notice and a formal evidentiary hearing is required by due process. That is not the question before the Court. The Court only has before it the State's Motion for Summary Judgment on the grounds that Melba Jahn's due process rights were not violated. The Court is only addressing that issue and finds that as a matter of law the State's Motion must be denied.

John Doe
 River Street
Traverse City, MI 49684

Social Security Number:<br>
Document Locator Number:<br>
Date of This Action:

Dear Mr.

Your Form 1040 for the tax period ————————————— shows an overpayment of $ .

Under authority of section 6402(c) of the Internal Revenue Code, we have kept all or part of your overpayment to fully or partially satisfy a notice of past-due support obligation. The amount we kept has been paid to Office of Child Support.

If you have any questions about this obligation or believe it in error, please contact the agency listed below at the address or phone number shown.

If you owe no other Federal taxes, a refund check for any remaining balance due you will be issued to you within 4 to 6 weeks.

Sincerely yours,

Chief, Taxpayer Assistance Section

Your Overpayment: $

Amount Kept: $

Balance Due You: $

State Agency: Office of Child Support

Address: 300 South Capitol Avenue, Box 30037
 Lansing, Michigan 48909

Telephone Number: 517–373–6707

Appendix No. 2

If you have any questions, refer to this information:

Date of this Notice:
Social Security Number:
Document Locator Number:
Form: Tax Year:

Call·

or

Write: Chief, Taxpayer Assistance Section
 Internal Revenue Service Center

INTERNAL REVENUE SERVICE

**OVERPAID TAX APPLIED TO PAST-DUE SUPPORT OBLIGATION**

Under authority of section 6402(c) of the Internal Revenue Code, we have kept all or part of your overpayment of tax to fully or partially satisfy a past-due child/spousal support obligation. It will be paid to the state agency named below. If you have questions about this obligation or believe the amount is in error, you should contact the State agency.

If this was a joint return and both spouses had income the spouse who is not liable for the past-due support may object to having his or her share of the overpayment applied against the other spouse's obligation. We will divide a joint overpayment between spouses if a claim (Form 1040X, Amended U.S. Individual Income Tax Return) is filed showing each spouse's share of the tax and contribution to the overpayment. In community property States, the joint overpayment must be divided according to State laws.

If you have questions about your joint overpayment, you may call or write us -- see the information in the upper right corner. To make sure that IRS employees give courteous responses and correct information to taxpayers, a second employee sometimes listens in on telephone calls.

**TAX STATEMENT**

Your overpaid tax on return

Amount of overpaid tax applied
to past-due obligation

Amount to be refunded to you or
applied to your estimated tax. $

(Your refund check will be mailed to you in 6 to 8 weeks if you owe no Federal taxes. Any interest due you will be added.)

**STATE AGENCY**

TELEPHONE