Patrick **JAHN** and **Melba Jahn, Plaintiffs,**

v.

**Donald REGAN, Defendant.**

**Civ. No. 82–72012.**

United States District Court,
E.D. Michigan, S.D.

May 21, 1985.

Riley P. Richard, Southfield, Mich., for plaintiffs.

Ronald F. Fischer, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

This action against the Secretary of the Department of Treasury of the United States ("Secretary") and a similar case filed against the Director of the Department of Social Services of the State of Michigan[1] were initially brought by Patrick and Melba Jahn, husband and wife, who challenged the validity of the Internal

---

1. *Jahn v. Kheder,* No. 82–73045.

Revenue Service's ("IRS") transmittal of plaintiffs' 1981 joint tax refund to the State

**2.** Section 664 of Title 42 provides:

Collection of past-due support from Federal tax refunds.

(a) Procedures applicable; distribution

Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which has been assigned to such State pursuant to section 602(a)(26) or section 671(a)(17) of this title, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 657(b)(4) or (d)(3) of this title.

(b) Regulations; contents, etc.

The Secretary of the Treasury shall issue regulations, approved by the Secretary of Health and Human Services, prescribing the time or times at which States must submit notices of past-due support, the manner in which such notices must be submitted, and the necessary information that must be contained in or accompany the notices. The regulations shall specify the minimum amount of past-due support to which the offset procedure established by subsection (a) of this section may be applied, and the fee that a State must pay to reimburse the Secretary of the Treasury for the full cost of applying the offset procedure, and provide that the Secretary of the Treasury will advise the Secretary of Health and Human Services, not less frequently than annually, of the States which have furnished notices of past-due support under subsection (a) of this section, the number of cases in each State with respect to which such notices have been furnished, the amount of support sought to be collected under this subsection by each State, and the amount of such collections annually made in the case of each State.

(c) Definition

As used in this part the term "past-due support" means the amount of a delinquency, determined under a court order, or an order of administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living.

Pub.L. 98–378 § 21(a), (g), August 16, 1934, 98 Stat. 1322, 1326, provides that with respect to refunds payable under Section 6402 of Title 26 after December 31, 1985, subsection (a) of this section is amended by redesignating existing

pursuant to the Omnibus Budget Reconciliation Act of 1981, 42 U.S.C. § 664,[2] and 26

provisions as subsection (a)(1), and adding at the end the following new paragraphs:

(2)(A) Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support (as that term is defined for purposes of this paragraph under subsection (c) of this section) which such State has agreed to collect under section 654(6) of this title, and that the State agency has sent notice to such individual in accordance with paragraph (3)(A), the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to such past-due support, and shall concurrently send notice to such individual that the withholding has been made, including in or with such notice a notification to any other person who may have filed a joint return with such individual of the steps which such other person may take in order to secure his or her proper share of the refund. The Secretary of the Treasury shall pay the amount withheld to the State agency, and the State shall pay to the Secretary of the Treasury any fee imposed by the Secretary of the Treasury to cover the costs of the withholding and any required notification. The State agency shall, subject to paragraph (3)(B), distribute such amount to or on behalf of the child to whom the support was owed.

(B) This paragraph shall apply only with respect to refunds payable under section 6402 of title 26 after December 31, 1985, and before January 1, 1991.

(3)(A) Prior to notifying the Secretary of the Treasury under paragraph (1) or (2) that an individual owes past-due support, the State shall send notice to such individual that a withholding will be made from any refund otherwise payable to such individual. The notice shall also (i) instruct the individual owing the past-due support of the steps which may be taken to contest the State's determination that past-due support is owed or the amount of the past-due support, and (ii) provide information as may be prescribed by the Secretary of Health and Human Services by regulation in consultation with the Secretary of the Treasury, with respect to procedures to be followed, in the case of a joint return, to protect the share of the refund which may be payable to another person.

(B) If the Secretary of the Treasury determines that an amount should be withheld under paragraph (1) or (2), and that the refund from which it should be withheld is based upon a joint return, the Secretary of the Treasury shall notify the State that the with-

U.S.C. § 6402.[3] The refund was applied to the husband's debt to the State for child support.[4] Plaintiffs alleged various violations of state law and the fifth and fourteenth amendments of the federal Constitution. Now before the Court is the Secretary's second motion to dismiss.[5]

## I. BACKGROUND

On April 18, 1984, this Court issued a Memorandum Opinion on motions to dismiss and for summary judgment filed by the Secretary and the State. That opinion is reported at 584 F.Supp. 399 and sets forth the extensive facts of these cases which will not be repeated here. In the Memorandum Opinion the Court considered several grounds for dismissing the plaintiffs' complaint asserted by the Secretary and the State. Two of these grounds are relevant to the present motion: (i) the Court ruled that the doctrine of sovereign immunity barred plaintiffs' claim for damages, but not for injunctive and declaratory relief;[6] and (ii) the Court granted the defendants' motion for summary judgment concerning Patrick Jahn's due process claim, but declined to rule that Melba Jahn's rights were not violated. This ruling significantly narrowed the issues raised by plaintiff's complaint. The claims that remain against the government defendants are Melba Jahn's claim for a tax refund

holding is being made from a refund based upon a joint return, and shall furnish to the State the names and addresses of each taxpayer filing such joint return. In the case of a withholding under paragraph (2), the State may delay distribution of the amount withheld until the State has been notified by the Secretary of the Treasury that the other person filing the joint return has received his or her proper share of the refund, but such delay may not exceed six months.

(C) If the other person filing the joint return with the named individual owing the past-due support takes appropriate action to secure his or her proper share of a refund from which a withholding was made under paragraph (1) or (2), the Secretary of the Treasury shall pay such share to such other person. The Secretary of the Treasury shall deduct the amount of such payment from amounts subsequently payable to the State agency to which the amount originally withheld from such refund was paid.

(D) In any case in which an amount was withheld under paragraph (1) or (2) and paid to a State, and the State subsequently determines that the amount certified as past-due support was in excess of the amount actually owed at the time the amount withheld is to be distributed to or on behalf of the child, the State shall pay the excess amount withheld to the named individual thought to have owed the past-due support (or, in the case of amounts withheld on the basis of a joint return, jointly to the parties filing such return).

**3.** Section 6402 of Title 26 reads:

Authority to make credits or refunds

(a) General rule.—In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the over-

payment and shall, subject to subsection (c), refund any balance to such person.

(b) Credits against estimated tax.—The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year.

(c) Offset of past-due support against overpayments.—The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

**4.** An applicant to participate in the Aid to Families With Dependent Children ("AFDC") program must assign their right to child support to the State. The State then has a right to enforce the state court's decree for child support and collect those funds owed pursuant to the order.

**5.** The parties requested that this motion be decided on the briefs.

**6.** The Court also ruled that neither the Anti-Injunction Act, 26 U.S.C. § 7421(a), nor the Declaratory Judgments Act, 28 U.S.C. § 2201, barred plaintiffs' request for equitable relief. 584 F.Supp. at 407–09.

and her request for injunctive and declaratory relief concerning the constitutionality of the procedures for implementing 42 U.S.C. § 664 and 26 U.S.C. § 6402.

In the present motion the Secretary asserts two further contentions for the dismissal of Melba Jahn's claim. First, the Secretary argues that plaintiff cannot seek a tax refund since she has failed to file a claim with the Secretary as required by 26 U.S.C. § 7422(a). Second, the Secretary asserts that Melba Jahn's claims for injunctive and declaratory relief are now moot since newly implemented procedures comport with due process. For the following reasons the Secretary's motion is granted.

## II. PLAINTIFFS' CLAIM FOR REFUND

In their complaint plaintiffs requested damages and an amount representing their 1981 tax refund which was turned over to the State.[7] In the previous Memorandum Opinion the Court considered the Secretary's contention that the doctrine of sovereign immunity barred plaintiffs' suit. The Court held that since the plaintiffs were alleging that the Secretary's actions and the statutes at issue were unconstitutional, plaintiffs' claims were under one of the exceptions to the sovereign immunity rule—the exceptions being that government officials can be sued in their official capacity absent an expressed waiver of Congress where the official acted outside his authority or where the statute or order conferring power upon the official is claimed to be unconstitutional. *E.g., Larson v. Domestic Foreign Commerce Corp.*, 337 U.S. 682, 689–90, 69 S.Ct. 1457, 1461–62, 93 L.Ed. 1628 (1949). Although the plaintiffs' action was not generally barred, the Court further recognized that the principles underlying sovereign immunity could limit the *relief* which may be afforded if the relief would require an improper imposition upon the government. *Larson v. Domestic & Foreign Commerce Corp., supra*, 337 U.S. at 691 n. 11, 69 S.Ct. at 1462 n. 11. The Court concluded that the circumstances of this case did not warrant the relief of damages. 584 F.Supp. at 406. *See e.g., DeLao v. Califano*, 560 F.2d 1384 (9th Cir.1977); *Schlafly v. Volpe*, 495 F.2d 273 (7th Cir.1974); *State of Washington v. Udall*, 417 F.2d 1310 (9th Cir.1969).

In discussing the plaintiffs' claim for damages in the April 18th Memorandum Opinion, the Court expressed its reservations concerning plaintiffs' claim for a refund. 584 F.Supp. at 406 n. 14. The plaintiffs argued that they could properly seek damages and a refund in this Court because Congress had waived sovereign immunity by enacting 28 U.S.C. § 1346(a)(1). Section 1346(a)(1) states:

(a) The district court shall have original jurisdiction, concurrent with the United States Claims Court, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws ...

The difficulty with this position is that the requirements of 26 U.S.C. § 7422 must

---

**7.** Although plaintiff's prayed for remedies for a class action, they have never moved for certification to proceed as a class action. The plaintiffs requested the following:

    A. That the rights of the class members to refund of their entire overpayments of 1981 Federal income tax without reduction under 26 U.S.C. § 6402(c) be adjudicated and declared.

    B. That defendants be permanently restrained and enjoined from carrying out the provisions of 26 U.S.C. § 6402(c) and its related provisions.

    C. That plaintiff class be awarded damages incident to the equitable relief requested, in such sum as the Court deems equitable, in excess of One Million ($1,000,000) Dollars, together with damages to the individual plaintiffs in the amount of the overpayment improperly taken by defendant.

    D. That plaintiffs be awarded attorney fees and their costs herein.

    E. That plaintiffs have such other relief as to the Court may seem appropriate.

be satisfied before an action can be pursued under § 1346(a)(1). *E.g. Zernial v. United States,* 714 F.2d 431 (5th Cir.1983); *Disabled American Veterans v. United States,* 650 F.2d 1178 (Ct.Cl.1981); *Bird v. United States,* 534 F.2d 1214 (6th Cir.1976); *Theophelis v. United States,* 571 F.Supp. 516 (E.D.Mich.1983).[8] Section 7422(a) provides:

> *No Suit Prior to Filing Claim for Refund*—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

The purpose of this section is to afford the Internal Revenue Service an opportunity to consider and dispose of claims without the expense and time involved in litigation and to prevent surprise on the facts. *E.g., Dahlgren v. United States,* 553 F.2d 434 (5th Cir.1977), *rehearing denied,* 557 F.2d 456; *Bird v. United States, supra; Lemoge v. United States,* 378 F.Supp. 228 (N.D.Cal.1974).

The courts and the Secretary's regulations require that the basis of the taxpayer's claim for refund "must be *specifically set forth in the claim* for refund [filed with the Secretary], otherwise the court in a refund action is without jurisdiction to consider them." *Bird v. United States, supra,* 534 F.2d at 1219 (emphasis supplied). Regulation § 301.6402–2(b) states:

The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to appraise the Commissioner of the exact basis thereof ... A claim which does not comply with this paragraph will not be considered for any purposes as a claim for refund or credit.

The Secretary contends that Melba Jahn has not filed a proper claim and that her claim for refund cannot be considered by this Court. The plaintiff presents two arguments in opposition. First, plaintiff asserts that she did comply with § 7422 and the various regulations by filing a copy of her W–2 form along with their joint tax return. According to plaintiff since the W–2 forms set forth the separate wages of each individual and the income withheld, the defendant could have specifically apportioned the joint refund. The W–2 form by itself, however, is not sufficient. The W–2 form only concerns the breakdown of wages not of all income earned. On a joint return the separate income from every source and the deductions are combined with no breakdown on the return as to which spouse earned the income or incurred the deductible expenses. *Accord Marcello v. Regan,* 574 F.Supp. 586 (D.R.I. 1983).[9] Moreover, the presence of the W–2 does not give the Service sufficient notice of Melba Jahn's desire for a separate refund. *See e.g., Disabled American Veterans v. United States, supra; Bird v. United States, supra.*

The plaintiff's second argument is an apparent attempt to avoid the requirements of § 7422. Essentially plaintiff contends that since the Secretary violated various statutory and constitutional provisions in implementing the refund transfer program, plaintiff's suit comes under the exceptions

---

**8.** Plaintiff brings her suit against the Secretary in his official capacity. Section 7422(f)(1), however, states that a suit for a refund "may be maintained only against the United States and not against any officer or employee of the United States ..." Thus, her claim for refund must be viewed as a suit against the United States.

**9.** In *Marcell v. Regan,* 574 F.Supp. 586, 590 (D.R.I.1983), a case concerning the same transfer program, the court noted:

Because a typical joint federal tax return, standing alone, fails to furnish sufficient data to the Service upon which to base an intelligent determination of the proportion or amount of any refund which may be due to a nonobligated husband or wife, the Service, commencing on or about March 28, 1983, dispatched tax statement notifications to affected taxpayers.

to the sovereign immunity rule and "[a]ccordingly, plaintiffs action [sic] may be maintained even though the relief sought requires the defendant to take affirmative action." Plaintiff's Brief, at page 4. Presumably plaintiff asserts that because there is an alleged constitutional violation, this Court can order the return of the refund despite the statutory requirements.

Since plaintiff's claim for refund is a claim for funds belonging to the plaintiff and alleged to be held wrongfully by the government, the doctrine of sovereign immunity normally *may* not pose an obstacle to the Court ordering the government to return plaintiff's property.[10] This case, however, does not involve the situation where the government has acted wrongfully and has not consented to be sued. By vesting jurisdiction in district courts for claims for refunds under 28 U.S.C. § 1346(a)(1) and directing the procedures for such claims in enacting 26 U.S.C. § 7422, Congress has waived immunity through specifically designed procedures which are efficient and reasonable and to which plaintiff had easy access. Had plaintiff filed the appropriate claim, in all likelihood, she would have obtained her refund along with statutory interest. Plaintiff has not offered and the Court has not found any reason justifying ignoring the congressional design. Importantly, the requirements of § 7422 have in this Circuit been interpreted as being jurisdictional prerequisites. *Bird v. United States, supra,* 534 F.2d at 1214. For this Court to ignore § 7422 would not only raise substantial issues of sovereign immunity,[11] but also grave questions of this Court's authority under Article III of the Constitution.[12] Therefore, plaintiff's claim for refund must be dismissed for her failure to comply with § 7422(a).

### III. PLAINTIFF'S CONSTITUTIONAL CLAIMS

■ In their complaint the plaintiffs alleged that the procedures implemented to effectuate the transfer program for 1981 tax returns violated their constitutional rights to due process. They seek injunctive and declaratory relief to cure those violations. In the Memorandum Opinion of April 18th, the Court ruled that the state and federal procedures were constitutionally adequate for persons in Patrick Jahn's situation as a postjudgment debtor. 584 F.Supp. at 413–16.[13] As to Melba Jahn, the Court held that the undisputed facts did not establish that her procedural rights were not violated. The Court cited the inadequacy of notice and the procedures established for informing an unobligated taxpayer—the spouse not liable for child support—of her right to her portion of the refund.[14] Melba Jahn received no notice of

10. *See United States v. Testan,* 424 U.S. 392, 401–02, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976); *DeLao v. Califano,* 560 F.2d 1384, 1390–91 (9th Cir.1977); *Eastport S.S. Corp. v. United States,* 372 F.2d 1002 (Ct.Cl.1967).

11. *See Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981); *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1940).

12. Article III authorizes Congress to establish lower Courts it deems appropriate. This authority has been interpreted as permitting Congress to define the jurisdictional limits of district courts. *See Northern Pipeline Const. v. Marathon Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981); *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed.

1058 (1940); *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932); *United States v. Klein,* 13 Wall. 128, 20 L.Ed. 519 (U.S.1872); *Ex Parte McCardle,* 7 Wall. 506, 19 L.Ed. 264 (U.S. 1869); *Sheldon v. Sill,* 8 How. 440, 12 L.Ed. 1147 (U.S.1850). *See generally* Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialetic,* 66 Harv.L.Rev. 1362 (1953). Since the requirements of § 7422 are jurisdictional and since they are constitutionally sound, this Court does not have the power to hear cases and fashion results in deviation of those congressional mandates.

13. A judgment in state court ordered Patrick Jahn to pay child support.

14. The Court stated:
    The notice the IRS sent in 1982 informing a taxpayer/debtor of the withholding of his 1981 refund in satisfaction of his child support obligation, does not even mention that if

the transfer until the refund had already been given to the State. Moreover, the post-transfer notices to the obligated spouse did not inform the nonobligated spouse of the procedures required to obtain her share of the joint refund. The Court concluded: "Certainly, no concept of fairness embodied in due process would require this onus on an unobligated taxpayer and this delay to retrieve funds rightfully hers." [15]

Shortly before the Court issued its Memorandum Opinion of April 18th, the State and Secretary entered into a consent judgment with different plaintiffs in the case of *Jones v. Ritsema*, No. 82–73574, before the Honorable Horace Gilmore of this District.[16] The plaintiffs in *Jones* had raised similar complaints concerning the transfer system as raised by the Jahns. The Secretary contends that these new procedures satisfy the requirements of due process; thereby making Melba Jahn's claims for injunctive and declaratory relief moot.[17] Melba Jahn resists this contention and claims that the new procedures do not pass constitutional muster. Therefore the Court must determine whether the procedures provided in the consent decree conform to constitutional standards.

Initially, the Court is mindful that the consent judgment in *Jones*, although agreed upon by the parties, was approved by Judge Gilmore. Implicit in Judge Gilmore's entry of the decree is his determination that the procedures established by the consent judgment were constitutionally satisfactory. Consequently, this Court is obligated to give proper deference to that determination. *See e.g., United States v. Anaya*, 509 F.Supp. 289, 293 (S.D.Fla. 1980), *aff'd sum nom, United States v. Zayas-Morales*, 685 F.2d 1272 (11th Cir. 1982) ("absent unusual or exceptional circumstances, judges of coordinate jurisdiction within a jurisdiction should follow brethren judges' rulings."); *Buna v. Pacific Far East Line, Inc.*, 441 F.Supp. 1360, 1365 (N.D.Cal.1977) ("Judges of the same district court customarily follow a previous decision of a brother judge upon the same question except on unusual or exceptional circumstances.").

It should be noted further that in the case of *Marcello v. Regan, supra*, a case also concerning the tax intercept program, the court ordered procedures substantially similar to the ones under consideration here as remedy for procedures it deter-

they filed a joint tax return and the wife was entitled to a refund based on her income, she could seek return of that share. In fact, the IRS notice does not even mention joint tax filing or refunds. Not until the taxpayers contacted the Michigan Office of Child Support were they informed of procedures for the unobligated spouse to obtain her share of the funds. The cumulative effect of these notices deprived Melba Jahn, and those similarly situated, of any knowledge that her property rights had been infringed until long after it had been seized and transferred to the State. Clearly, the purpose of requiring notice—to alert individuals that their interests are being affected and to permit adequate preparation to challenge those activities—was defeated by the government's conduct and Melba Jahn's rights violated....

The inadequacy of the notices and the procedures established for informing a taxpayer that she had a right to her portion of the joint refund compounded the deficiencies of the process to obtain the refund. Once the unobligated spouse finally learned that she could obtain her refund, she had to refile 1040X form and wait for a refund. This procedure

led to a further delay in freeing funds the State wrongfully held. Certainly, no concept of fairness embodied in due process would require this onus ... on the unobligated taxpayer and this delay to retrieve funds rightfully hers.

584 F.Supp. at 417. In a footnote the Court further noted:

This ruling is not intended to suggest that notice and a formal evidentiary hearing is required by due process. That is not the question before the Court. The Court only has before it the State's Motion For Summary Judgment on the grounds that Melba Jahn's due process rights were not violated. The Court is only addressing that issue and finds that as a matter of law the State's Motion must be denied.

*Id.* at 417, n. 41.

**15.** *Id.* at 417.

**16.** A copy of the consent judgment is attached to this opinion as Appendix "A".

**17.** *See supra* note 7.

mined violated constitutional rights. 574 F.Supp. at 600.

The consent judgment provides for pre-offset notice and hearing as well as post-offset notice and hearing. The pre-offset notice is sent by the State to those obligated and delinquent in child support payments to the State. The notice is required to be sent before an obligated spouse's name has been certified to the IRS for the transfer of his tax refund. The notice is to contain the following language concerning the rights of the nonobligated spouse:

> If you intend to file a joint return and both spouses have income, the spouse that is not liable for the past due support may object to having his or her share of the overpayment applied against the other spouse's obligation. You may divide a joint refund between the spouses by filing a claim (Form 1040X U.S. Tax return) after you receive notice that the overpayment has been intercepted and applied to the obligated spouse's delinquent child support.

After receiving the pre-offset notice, the consent judgment provides that the taxpayer is entitled to a hearing in front of an official of the "Friend of the Court"—the agency responsible for, among other duties, ascertaining the amount and enforcing payment of delinquent court-ordered support payments—to determine the accuracy of the State records showing delinquency in support payments.

The consent decree further requires that the IRS shall send a post-offset notice informing the obligated spouse that his or her income tax refund has been intercepted to satisfy alleged delinquent child support obligations. The notice is also to inform the individual of the government agencies to contact if he has any questions concerning his obligation. The notice further informs a nonobligated spouse of her right to claim a portion of the income tax refund in the case of a joint return by filing a form "1040X" with the IRS.

Finally, the consent judgment provides that all persons whose tax refunds are intercepted to satisfy alleged delinquent child support obligations will be entitled to a hearing in front of the "Friend of the Court" to dispute their delinquency.

The Secretary contends that the pre-offset and post-offset notices combined with the availability of filing a 1040X form to receive a separate refund are constitutionally adequate procedures to protect the interests of a nonobligated spouse. The thrust of Melba Jahn's response to this contention is her cursory assertion that: "the defendant has the means and ability to provide additional or substitute procedural safeguards which would insure that individuals such as Melba Jahn would not be wrongfully deprived of their property." Plaintiff's Brief, at page 6. Plaintiff's argument in this regard is deficient and ill-conceived. Plaintiff fails to suggest what alternative or additional procedures could be implemented [18] and what minimal protections due process should require. Instead, the plaintiff merely insists that the procedures are not enough. Moreover, the plaintiff fails to recognize the real question before the Court. The issue presented by this motion does not concern a total deprivation of property rights. Rather, the issue is whether the pre-offset and post-offset notices and the procedures provided for the nonobligated spouse to secure her share of the refund are constitutionally sound. There is no evidence before the Court that the procedures of filing the 1040X form and related documents are so inadequate that the nonobligated spouse cannot obtain her share. Hence, this is not the typical deprivation case, where the debtor's property is taken and retained, but a case involving potential *delay* in the possession of property. The essential question

---

**18.** Despite this statement, plaintiff does not offer any suggestions as to additional or different procedures which could be implemented. The plaintiff simply asserts: "These alternatives should be examined in depth after plaintiffs have obtained additional discovery from the defendant." Plaintiff's Brief, at page 6. Since the Secretary has submitted affidavits concerning this question, plaintiff's counsel's statement is not sufficient pursuant to Fed.R.Civ.Pro., Rule 56(e) & (f).

is whether the procedures and possible delay in the nonobligated spouse receiving her share of the refund are constitutionally permissible.[19]

The touchstone of due process analysis is the recognition of the plasticity of the doctrine. Generally procedural due process consists of a right to notice and an opportunity to be heard, but the form of these requirements is not rigid.[20] As the Supreme Court enunciated in *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972):

> It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.... To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

Against this backdrop the Supreme Court has established certain factors to act as a paradigm for testing the adequacy of government procedures:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of

additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

First, as to the interest of the nonobligated spouse, it is beyond question that the nonobligated spouse has a substantial interest in obtaining her tax refund. *See Marcello v. Regan, supra*, 574 F.Supp. at 596. However, the issue here is not deprivation, but delay. Certainly, the nonobligated spouse's interest in receiving the refund without the delay occasioned by the procedures provided in the consent judgment is much less compelling than the complete deprivation of the funds. As this Court stated in the Memorandum Opinion of April 18th:

> Typically, the funds constituting a tax refund have *never been* in the taxpayer's possession. Tax refunds normally take some time to be determined and sent to the taxpayer. Therefore, although the taxpayer certainly has significant interest in the funds, his interest is not one hinged on the *immediacy* of receiving the refund.

584 F.Supp. at 415.

The second *Eldridge* factor, the need for additional safeguards to prevent error, concerns the adequacy of the procedures in light of the decision the government official is to make. As the *Eldridge* court stated: "An additional factor to be considered is the fairness and reliability of the existing pretermination procedures, and the probable value, if any, of additional procedural safeguards. Central to the evaluation of any administrative process is the nature of the relevant inquiry." 424 U.S. at 343. The determination to be made is the amount of the nonobligated spouse's share of the joint tax return. This is a

---

**19.** The Secretary concedes that even if the nonobligated spouses share is transferred to the State before her 1040X is processed, the nonobligated spouse will still receive her share of the refund from the Services.

**20.** *E.g., Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–49, 95 L.Ed. 817 (1950) (Frankfurter, J. concurring).

matter of simple calculation. It does not involve issues of credibility or complicated factual determinations. The 1040X and other forms provide all the information necessary for the Service to accurately allocate the joint return. Although a hearing, either formal or informal, would certainly ensure greater accuracy in the Service's decision-making, the determination to be made does not warrant the expense and delay of such a procedure. *E.g., Mathews v. Eldridge, supra,* 424 U.S. at 343–45, 96 S.Ct. at 907–08; *Transco Security, Inc. v. Freeman,* 639 F.2d 318, 322 (6th Cir.), *cert. denied,* 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981). Thus, no further procedural safeguards are necessary because of the low-risk of error and the simplicity of the issues.

The third factor—"the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail" [21] —balances the realities of mass democracy with ideal concepts of procedural "fairness." The generally recognized conception of "fairness" consists of pre-deprivation notice and formal hearing.[22]

Although:

the worthy purpose of the legislation and the innate distaste for those who shirk familial obligations tend to cloud the high ground of constitutional principle, such subjective judgments are a luxury which the courts cannot indulge. The protections of the Constitution are not reserved for popular, or even socially acceptable, causes.[23]

On the other hand:

In striking the appropriate due process balance the final factor to be assessed is the public interest. This includes the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional

right, an evidentiary hearing upon demand in all cases prior to the [deprivation of property rights]. The most visible burden would be the incremental cost resulting from the increased number of hearings and the expense of providing benefits to ineligible recipients pending decision ...

Financial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision. But the Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed. At some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost. Significantly, the cost of protecting those whom the preliminary administrative process has identified as likely to be found undeserving may in the end come out of the pockets of the deserving since resources available for any particular program of social welfare are not unlimited ...

But more is implicated in cases of this type than ad hoc weighing of fiscal and administrative burdens against the interests of a particular category of claimants. The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness. We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the origin and function of administrative agencies preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts.... The judicial model of an evidentiary hearing is neither a required, nor even the most

---

**21.** *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

**22.** *See e.g., Mitchell v. W.T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90

S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

**23.** *Marcello v. Regan,* 574 F.Supp. 586, 596 (D.R. I.1983).

effective, method of decisionmaking in all circumstances.[24]

The interests of the government are substantial. Although Congress intended the states to be primarily responsible for the collection of child support payments, to facilitate state efforts Congress established methods to enable the states to utilize federal resources such as the transfer program in question here.[25] The governmental interest in the transfer program was recognized in the Court's previous Memorandum Opinion in the analysis of the obligated spouse's procedural rights:

the State has a significant financial interest in obtaining payment in accordance with the court-ordered support obligations. The money collected is to repay the State for AFDC benefits which have been paid by the State to the taxpayer's indigent ex-spouse or children. The transfer method enables the State to retrieve substantial sums which reasonable collection methods could not produce.[26] This money can then be made available to meet the urgent needs of other welfare recipients or indigent individuals in the State. Additional procedures such as a formal hearing as plaintiffs suggest, would only unnecessarily waste resources which could be used to further AFDC programs to help the needy more expeditiously.[27]

The Secretary submitted affidavits which established the following facts which further reveal the soundness of the procedures in the consent judgment.[28] The Census Bureau reported that in 1981 alone 8.4 million women had children under the age of 21 whose fathers were absent of which 4 million were to receive child support payments pursuant to court orders or agreements. Of these 4 million women, only 47% were receiving full payments. The Bureau estimated that due to this delinquency on the part of obligated spouses children did not receive 4 million dollars worth of support payments which they were entitled.

By contrast, the transfer system has been remarkably successful considering it is a measure of last resort.[29] In 1983, 800,000 cases were submitted to the Service representing $3.3 billion in unpaid child support. Of those submitted, approximately 339,000 1982 tax refunds were intercepted which account for revenues totalling over $180 million. In Michigan, 73,580 names were certified to the Department of Social Services in 1983, representing $336,-

---

**24.** *Mathews v. Eldridge,* 424 U.S. 319, 335, 347–48, 96 S.Ct. 893, 903, 908–09, 47 L.Ed.2d 18 (1976).

**25.** *See, e.g.,* S.Rept. No. 93–1356, 93rd Cong., 2nd Sess., reprinted in 1974 U.S.Code Cong. & Adm.News 8133, 8150.

**26.** To procure a tax refund for one owing the State child support payments, the responsible State agency is required to certify to the Department of Social Services: (i) that the amount of the arrearage reported is accurate; (ii) that the arrearage is owed to the State; (iii) that the arrearage is at least three months old; and (iv) that reasonable efforts have been made to collect the arrearage amount. This requirement is pursuant to 42 U.S.C. § 644(b) and 45 C.F.R. § 303.72(b). *See* 47 Fed.Reg. 7427 (1982).

**27.** 584 F.Supp. at 415–16.

**28.** Some of these facts were presented through newspaper articles. The plaintiff objects to the use of the articles on hearsay grounds. Given the nature and the source of these articles they are of sufficient trustworthiness to be proper

under the "other exceptions" exception to the hearsay rule, Federal Rules of Evidence, Rule 803(24). *See Dallas County v. Commercial Union Assurance Co.,* 286 F.2d 388 (5th Cir.1961); *Land v. American Mutual Ins. Co.,* 582 F.Supp. 1484 (E.D.Mich.1984).

Plaintiff also objects to the contents of Fredric F. Perdue's affidavit for containing "opinions and conclusions." It may be that a portion of this affidavit does contain opinions, however, they are based upon the other facts presented in the affidavit. Moreover, given Perdue's position, Director of the Returns Processing and Accounting Division of the IRS, and familiarity with the facts it seems that such opinions would be proper under Federal Rules of Evidence, Rules 701, 702 and 704.

**29.** *See supra,* note 26. The State can utilize the transfer system only after all other reasonable methods of collection have been exhausted. The purpose of this requirement is "to avoid treating IRS collection as the primary method of enforcement where, in fact, other effective means are readily available for the State to use." 47 Fed.Reg. 7427 (1982).

879,284. A total of 30,338 offsets were performed resulting in $18,925,024.23 in collected child support payments. Through June of 1984, approximately 389,000 1983 tax refunds have been intercepted by the IRS which collected in excess of $200 million on delinquent child support obligations. Of these, 30,519 were submitted by the Michigan state agency which resulted in collections in the amount of $18,149,945.42.

Furthermore, the number of nonobligated spouses who have separately contributed to a joint refund which will be intercepted by this program is relatively small. Fredric F. Perdue is the Director of the Returns Processing and Accounting Division of the IRS and his supervised and directed the design and implementation of the child and spousal support offset program. In his affidavit Perdue asserts:

> only 1% of the approximately 335,000 offsets performed from January through November 1983 were reversed because of requests for allocation. A study of the calendar year 1981 refund offsets indicates that 44.5% of 265,600 offsets were from joint returns. Implementation of [additional procedures concerning joint returns] would therefore delay processing refunds on more than 125,000 returns in an effort to locate approximately 3,000 nonobligated spouses who might desire allocation.

Perdue Affidavit, # 6. Moreover, the system now used by the Service to process these requests is fully automated and saves considerable time and money.[30]

Under these circumstances, the notice and procedures for the nonobligated spouse to obtain her share of a joint tax return provided in the consent judgment do comply with constitutional standards. As to notice, the consent judgment provides that before the state can certify an obligated spouse's name for offset a notice must be sent informing him and a potential nonobli-

gated spouse of the action and their rights. Ideally a separate notice would be sent to the obligated and nonobligated spouse, but such notice is impractical because the existence of the nonobligated spouse who intends to file a joint tax return and who will be entitled to a separate portion of the refund cannot be known before the tax return is filed. More importantly, the notice sent to the obligated spouse "is reasonably calculated ... to apprise" the nonobligated spouse that her interests may be affected and procedures available to protect those interests. *See Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); Fed. R.Civ.Pro., Rule 4(d)(1). The pre-offset as well as the post-offset notice clearly set forth the nonobligated spouse's right to her share of the refund and the procedures required to obtain that share.

The post-offset procedure of filing a 1040X form and related documents likewise satisfies constitutional notions of fair process. Since the correct apportioning of the refund cannot be accomplished from the information provided on a joint tax return, some further filing by the nonobligated spouse is necessary. The use of a 1040X form filed after the taxpayer has received notice of the offset is an efficient procedure and in keeping with established IRS operations so as to avoid undue delay. Even if the return is overly delayed the nonobligated spouse would be entitled to statutory interest.[31] It would seem that since the major goal of the offset program is the most cost-efficient method of collection, that the Service would have substantial motivation to be prompt to avoid incurring statutory interest. To require other procedures would not be justified considering the costs and would not be desirable because of the likelihood of further delay to the nonobligated spouse receiving her share of the return—which is the very interest at question here.[32] The procedures

---

**30.** The new procedure has reduced costs by approximately $7 per offset.

**31.** *See* 26 U.S.C. § 6611(a).

**32.** In his affidavit Perdue states that the Service has been able to achieve full automation which

has substantially reduced costs, as Congress intended. Perdue Affidavit, § 5. *See* H.R.Rpt. No. 208, 97th Cong., 1st Sess. (1981); S.Rept. No. 139, 97th Cong., 1st Sess. (1981), U.S.Code Cong. & Admin.News 1981, p. 396. Perdue also explains that apportioning of the nonobligated

in the consent judgment do not suffer from the same lack of notice and onus on the nonobligated spouse that the procedures implemented for the 1981 tax refund possessed. *See* 584 F.Supp. at 416–17.

In sum, considering the plaintiff's interest, the low risk of error in administrative decisionmaking in the present system, the substantial government interest, the large number of tax offsets compared to the relatively small number of nonobligated spouses whose share of a joint tax return will be adversely affected, and the reasonableness and efficiency of the system, the procedures provided in the consent judgment satisfy procedural due process.

Therefore, the Secretary's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

APPENDIX "A"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

JULIE JONES, et al., Plaintiffs,

v.

GERHARD RITSEMA, et al.,

Defendants.

Case No. 82 73574

CONSENT JUDGMENT

At a session of said Court,

held in the City of Detroit,

County of Wayne and State of

Michigan, on: MAR 29 1984.

PRESENT: HONORABLE HORACE W. GILMORE

U.S. DISTRICT COURT JUDGE

NOW COME Plaintiffs, by and through their attorneys, the UAW LEGAL SERVICES PLAN, and Defendants, GERHARD F. RITSEMA, Wayne County Friend of the Court, by and through his attorney, EDWIN COMBER, and NOBLE P. KHEDER, Director, Michigan Department of Social Services, by and through his attorney, RONALD W. CARLSON, and DONALD REGAN, Secretary of Treasury (hereinafter Regan), and RICHARD SCHWEIKER, Secretary of Health and Human Services (hereinafter Schweiker),

spouse's share can only occur after the return has been filed. Perdue Affidavit, §§ 3, 5 & 7. Further, "[n]otification of the nonobligated spouse after the return has been filed but prior to offset, to permit the spouse to supply information to enable pre-offset allocation of the overpayment, would likely cause significant delay and added costs." Perdue Affidavit, § 5. It appears that the Service would have to freeze the taxpayers' refund until a reply was received from the nonobligated spouse. Perdue Affidavit, § 6. The resulting delay would likely be longer than any delay which occurs under the system currently in practice and provided in the consent judgment. Perdue Affidavit, §§ 5 & 6. As Perdue explained:

[such a] procedure would require manual extraction of the related tax return from the files, potential additional correspondence with the taxpayers directly involved, and additional input of tax data into the computer system to complete the processing of the return. This procedure would affect all jointly filed returns whether or not the nonobligated spouse objects to the offset of his or her share of the refund, or had any taxable income or withholding entitling him or her to a portion of the refund.... Implementation of this procedure would therefore delay processing refunds on more than 125,000 returns in an effort to locate approximately 3,000 nonobligated spouses who might desire allocation. Perdue Affidavit, § 6.

APPENDIX "A"—Continued

by and through their attorney, RONALD FISCHER, and hereby consent and stipulate to the following entry by the Court as a final resolution of the above-entitled case.

IT IS HEREBY ORDERED AND ADJUDGED:

## PRE–OFFSET NOTICE

1. A pre-offset notice shall be sent by the state or its assignee to all persons in the State of Michigan who may be certified to the Internal Revenue Service as delinquent in child support payments under the federal-state intercept program authorized pursuant to 42 U.S.C. 644 (West Supp.1982) and 26 U.S.C. 6402 (West Supp.1982). The notice shall be sent before the name has been certified and shall contain the following information:

   a) a statement that the person has a right to a hearing to dispute the certification if he or she believes the amount certified is in error, if he or she is currently on a wage assignment or questions the amount for any other reason;

   b) a statement informing the person that he or she may contact the Friend of the Court to request a hearing;

   c) a statement informing the recipient of the right of a non-obligated spouse to receive his or her portion of the tax refund from the Internal Revenue Service in the case of a joint return.

2. A copy of a proposed pre-offset notice is attached as Exhibit A and it is agreed between the parties that that notice is sufficient to satisfy the requirements of this order.

## PRE–OFFSET HEARING

3. All persons who believe that their names should not be certified as delinquent in child support obligations for the purpose of intercepting their tax refunds by the Internal Revenue Service are entitled to a hearing. Kheder, of the Department of Social Services, agrees to instruct all local offices of the Friend of the Court in the State of Michigan to conduct hearings for all individuals who request one.

4. Any individual requesting a hearing may do so by contacting the Friend of the Court office in the county that the support order was entered. The hearing may be informal before an employee of the Friend of the Court who has the authority to request a deletion of the individual's name from the certification list. The individual must be allowed to appear personally or with an attorney or other individual, present documentary evidence and examine the evidence that forms the basis of the certification. The informal hearing need not conform to the Michigan Administration Procedures Act M.C.L.A. 24.271 et seq.

5. The decision of the hearing officer shall be in writing and will be issued within ten (10) days of the hearing. The decision shall inform the individual: 1) that his or her name will be deleted from the certification list, or 2) that his or her name will not be deleted from the certification list. If the individual is informed that his or her name will not be deleted from the certification list, he or she will be told the basis for that decision. The written decision will also inform the individual of his or her right to appeal the decision to a referee and/or circuit court. Failure to request a pre-offset hearing does not waive any right to request a "post-offset hearing."

6. A copy of a standard hearing form which may be used by the hearing officer is attached as Exhibit B and it is agreed between the parties that it is sufficient to satisfy the requirements of this order.

## POST–OFFSET NOTICE

7. A post-offset notice shall be sent by the Internal Revenue Service informing the obligated spouse that his or her tax income refund has been intercepted to satisfy alleged delinquent child support obligations. The notice shall inform the individual to contact the named social services agency if he or she has questions about the obligation.

8. The notice shall also inform a non-obligated spouse in the case of a joint return of his or her right to claim a portion of the

APPENDIX "A"—Continued

income tax return by filing a form "1040X" with the Internal Revenue Service.

9. The parties further agree that the notice sent by the Internal Revenue Service for the taxable year of 1982 satisfies the requirements of this order.

## POST–OFFSET HEARING

10. All persons whose tax refunds are intercepted to satisfy alleged delinquent child support obligations will be entitled to a hearing to dispute their delinquency. Defendant Khedar, of the Department of Social Services, will instruct all local offices of the Friend of the Court in the State of Michigan to conduct hearings for all individuals who request one.

11. Any individual requesting a hearing may do so by contacting the Friend of the Court in the county that the support order was entered. The hearing may be informal before an employee of the Friend of the Court who has the authority to obtain a return of the money intercepted. The individual must be allowed to appear personally or with an attorney or other individual, present documentary evidence and examine the evidence that forms the basis of the intercept.

12. The decision of the hearing officer shall be in writing and will be issued within ten (10) days of the hearing. The decision shall inform the individual: 1) that the amount offset from his or her tax refund will be refunded, or 2) that a stated portion of the amount offset from the tax refund will be returned, or 3) that the amount offset from the tax return will not be returned. If the individual is informed that the amount offset will not be returned to him or her, he or she will be told the basis for that decision. The written decision will also inform the individual of his or her right to appeal the decision to a referee and/or circuit court.

13. A copy of a standard hearing form which may be used by the hearing officer is attached as Exhibit C and it is agreed between the parties that it is sufficient to satisfy the requirements of this order.

## INDIVIDUAL CLAIMS

14. The undersigned agree that the tax refunds of the following plaintiffs, CHARLES KNIGHT, GEORGE RAY and GEORGE BUSH, were intercepted although they were not delinquent in their child support obligations and that each person's tax refund has been returned.

15. The undersigned agree that plaintiff JOHN JONES' tax refund has been returned to him. It is further agreed that the Department of Social Services waives any claim against plaintiff JONES for any child support arrearage arising out of a child support order entered in Wayne County Circuit Court case, Pamela Jones vs. John Jones, NO. FC288–120.

16. The parties agree that plaintiff LEROY JASPER'S tax refund has been returned to him. It is further agreed that the Department of Social Services waives any claim against plaintiff JASPER for any child support arrearage arising out of a child support order entered in Wayne County Circuit Court case, Dorothy Jean Jasper vs. LeRoy Jasper, NO. 77–715–433 DM.

## DEFENDANT RITSEMA

17. The defendant GERHARD F. RITSEMA, Wayne County Friend of the Court, is dismissed with prejudice, without costs or fees to any party except as listed in Paragraph 19.

## DEFENDANTS REGAN AND SCHWEIKER

18. Defendants Regan and Schweiker enter into this Consent Judgment for the sole reason of settling the above-entitled case. By entering into this Consent Judgment, they do not agree or stipulate that Plaintiffs or any other persons are entitled constitutionally, to the specific relief granted. Nor do they agree or stipulate that Plaintiffs or any other persons are legally entitled to declaratory relief that persons who are on wage assignments who are delinquent on child support obligations are entitled to be excluded from the tax intercept program. However, they have no objection to the Michigan Department of Social Services agreeing to provide this relief

APPENDIX "A"—Continued

nor will it affect in any way the federal government's funding of Michigan's program for the Assistance to Families with Dependent Children.

### ATTORNEYS FEES

19.  Plaintiffs' attorneys, UAW LEGAL SERVICES PLAN, are hereby awarded attorneys' fees and costs in the amount of Three Thousand Five Hundred ($3,500.00) Dollars, as a full and final settlement against defendants KHEDER and/or RITSEMA; to be paid as follows: Three Thousand Five Hundred ($3,500.00) Dollars by defendant KHEDER. As to Defendant SCHWEIKER, Plaintiffs waive any claim to attorneys' fees and costs against him. Plaintiffs do not waive any claims against defendant REGAN for attorneys' fee or costs by the entry of this Order, nor does Defendant, REGAN agree that he is liable for any attorneys' fees or costs.

_HORACE W. GILMOR_
_____

HONORABLE HORACE GILMORE
U.S. DISTRICT COURT JUDGE

Approved as to form and substance:

_Dolores M. Galea_
_____
DOLORES M. GALEA
Attorney for Plaintiffs
(UAW LEGAL SERVICES PLAN)

_Ronald Carlson_
_____
RONALD CARLSON
Attorney for Defendant Kheder

_Ronald J. Fischer_
_____
RONALD FISCHER
Attorney for Defendants Regan
 and Schweiker

_Edwin Comber_
_____
EDWIN COMBER
Attorney for Defendant Ritsema

APPENDIX "A"—Continued

EXHIBIT A

FEDERAL TAX REFUND OFFSET PROGRAM
OFFICE OF CHILD SUPPORT
P.O. BOX 30037
LANSING, MICHIGAN 48909
PHONE (517) 373-6707

YOUR NAME IS BEING REFERRED TO THE INTERNAL REVENUE SERVICE (IRS) FOR COLLECTION OF PAST DUE CHILD AND/OR SPOUSAL SUPPORT. ANY FEDERAL INCOME TAX REFUND TO WHICH YOU MAY BE ENTITLED MAY BE RETAINED IN FULL OR IN PARTIAL SATISFACTION OF THIS OBLIGATION. OUR RECORDS SHOW THAT YOU OWE AT LEAST THE AMOUNT SHOWN BELOW. YOU HAVE A RIGHT TO A HEARING TO DISPUTE THIS IF YOU BELIEVE THE AMOUNT IS IN ERROR, OR YOU ARE CURRENTLY ON A WAGE ASSIGNMENT OR QUESTION THE OBLIGATION FOR ANY OTHER REASON. IF YOU WOULD LIKE A HEARING, YOU SHOULD IMMEDIATELY CONTACT THE FRIEND OF THE COURT IN THE MICHIGAN COUNTY WHERE YOUR SUPPORT ORDER WAS ISSUED. IF YOU DO NOT SCHEDULE A HEARING PRIOR TO FILING THE RETURN, YOU MAY NOT HAVE AN OPPORTUNITY TO OBJECT UNTIL AFTER THE REFUND HAS BEEN RETAINED.

IF YOU INTEND TO FILE A JOINT RETURN AND BOTH SPOUSES HAVE INCOME, THE SPOUSE THAT IS NOT LIABLE FOR THE PAST DUE SUPPORT MAY OBJECT TO HAVING HIS OR HER SHARE OF THE OVERPAYMENT APPLIED AGAINST THE OTHER SPOUSE'S OBLIGATION. YOU MAY DIVIDE A JOINT REFUND BETWEEN THE SPOUSES BY FILING A CLAIM (FORM 1040X U.S. TAX RETURN) AFTER YOU RECEIVE NOTICE THAT THE OVERPAYMENT HAS BEEN INTERCEPTED AND APPLIED TO THE OBLIGATED SPOUSE'S DELINQUENT CHILD SUPPORT.

| SSN | CASE NUMBER | LOCAL PHONE NUMBER | PAST DUE AMOUNT |
|---|---|---|---|
| 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 | 72-01245 FM | (313) 224-5320 | $1,000.00 |

TO:   JOHN SMITH
      111 Parkway
      Detroit, Michigan 48214

## APPENDIX "A"—Continued
## EXHIBIT B

| NAME: |  |
|-------|-------|
| CASE NO: | DATE: |
| AMOUNT OFFSET: | CURRENT ARREARAGE |

After a careful review of your case, it has been determined:

____ Your name will __not__ be sent to the IRS for collection of past due child support;

____ Your name will be sent to the IRS for collection of past due child support and any tax refund you may be entitled to will be retained, for one or more of the following reasons:

⬜ The arrearage amount certified is correct.

⬜ You do not have a valid court order awarding custody to you. If you wish to have your custody order changed, you must file a petition in Circuit Court requesting a modification of the current order.

⬜ You are not currently on a wage assignment.

⬜ Child support payments were made directly to the spouse with custody rather than through the office of the Friend of the Court.

⬜ Other: _____

_____

SIGNED:                         REVIEWED:

_____            _____
                                SUPERVISOR
                                DATE:_____

IF YOU FEEL THE ABOVE ACTION IS NOT CORRECT, YOU HAVE A RIGHT TO ANOTHER HEARING BEFORE THE REFEREE. YOU HAVE A RIGHT TO BE REPRESENTED BY AN ATTORNEY AT THIS HEARING. IF YOU ARE UNSATISFIED WITH THE DECISION OF THE REFEREE YOU MAY APPEAL TO CIRCUIT COURT.

I would like to request a hearing before the Referee at this time.

YES: ____    NO: ____

REFEREE HEARING DATE: _____

## APPENDIX "A"—Continued
## EXHIBIT C

| NAME: | | |
|---|---|---|
| CASE NO: | DATE: | |
| AMOUNT OFFSET: | CURRENT ARREARAGE: | |

After a careful review of your case, it has been determined:

_____ That the *entire* amount offset from your tax refund will be returned to you.

_____ That you are entitled to a ~~partial refund of~~ *portion of the amount offset from your tax over-* ~~payment~~ *refund* in the amount of _____.

_____ That ~~your refund~~ *the amount offset from your tax refund* will not be returned to you for one or more of the following reasons:

☐ The arrearage amount certified was correct.

☐ You do not have a valid court order awarding custody to you. If you wish to have your custody order changed, you must file a petition in Circuit Court requesting a modification of the current order.

☐ Child support payments were made directly to the spouse with custody rather than through the Friend of the Court.

☐ Other: _____

_____

SIGNED:                                    REVIEWED:

_____            _____
                                       SUPERVISOR

                                       DATE:_____

IF YOU FEEL THE ABOVE ACTION IS NOT CORRECT, YOU HAVE A RIGHT TO REQUEST A HEARING BEFORE THE REFEREE. YOU HAVE A RIGHT TO BE REPRESENTED BY AN ATTORNEY AT THIS HEARING. IF YOU ARE UNSATISFIED WITH THE DECISION OF THE REFEREE YOU MAY APPEAL TO CIRCUIT COURT.

I would like to request a hearing before the Referee at this time.

YES: _____   NO: _____

REFEREE HEARING DATE: _____